UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

IN RE:

          CHAPTER 11

NATIONAL AIR CARGO, INC.,        CASE NO. 1-14-12414

          DEBTOR.

## JOINT MOTION FOR RELIEF OF STAY TO ALLOW PAYMENT OF DEFENSE COSTS UNDER MANAGEMENT LIABILITY PACKAGE POLICY

TO:    HONORABLE MICHAEL. J. KAPLAN, UNITED STATES BANKRUPTCY JUDGE

      National Air Cargo, Inc., as debtor and debtor-in-possession ("Debtor"), and JENNER &

BLOCK LLP, as Debtor's approved non-bankruptcy counsel ("Jenner") (Debtor and Jenner

sometimes collectively "Movants"), pursuant to Sections 105(a), 362(d) and 363(b) of Title 11 of

the United States Code ("Bankruptcy Code"), respectfully submit this motion ("Insurance

Motion") for an order allowing the payment of defense costs under the Forcefield Private

Company Management Liability Package Policy [Policy No. 0306-2056] (as subsequently

amended or modified, "Insurance Policy").  In support of this Insurance Motion, the Movants

represent as follows:

### I. JURISDICTION & VENUE

      1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.

      2.    This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

      3.    This Court is the proper venue for this proceeding pursuant to 28 U.S.C.

§§ 1408 and 1409.

4.     The statutory predicates for the relief requested herein are Sections 105(a), 362(d) and 363(b) of the Bankruptcy Code.

## II. BACKGROUND

### A. *Bankruptcy Filings*

5.     On October 17, 2014 ("Petition Date"), the Debtor commenced this Chapter 11 case ("Chapter 11 Case") by filing a voluntary petition ("Voluntary Petition") for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of New York ("Bankruptcy Court").

6.     The Debtor continues to operate its business and manage its properties as debtor-in-possession, pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

7.     The Declaration of Brian T. Conaway in Support of Chapter 11 Petition and First Day Motions ("Conaway Declaration") provides additional information about the Debtor's business, events leading to bankruptcy and contents of the Voluntary Petition, and is fully incorporated herein by reference.

### B. *Organization & Operations*

8.     The Debtor is a New York corporation headquartered in Orchard Park, New York, which is wholly owned by National Air Cargo Holdings, Inc., a Florida corporation ("NAC Holdings").  As of the Petition Date, the Debtor has a total of 80 employees, including 56 based in Western New York.

9.     As part of a global business, the Debtor operates as an air-based freight forwarder for cargo originating from, or destined for, North and South America.[1]  The Debtor essentially functions as a broker facilitating the movement of cargo through: (i) the utilization of aircraft

---

[1] Multiple non-Debtor affiliates provide services for other regions throughout the world (Japan, Middle East, etc.).

from various sources, including corporate affiliates and other commercial carriers; and (ii) other modes of transportation over the roads, railways and oceans.

### C. *Judgment & Pending Appeal*

10.     On February 24, 2011, Global BTG LLC ("Global") instituted suit against the Debtor for breach of contract in the United States District Court for the Central District of California [Case No. 2:11-cv-01657-JGB-JCG] ("Global Litigation").  At the conclusion of a jury trial and after consideration of post-trial motions, on or about April 24, 2014, the Court entered an amended judgment in favor of Global and against the Debtor for $9,927,232 ("Global Judgment").

11.     On April 30, 2014, the Debtor filed an Amended Notice of Appeal as to the Global Judgment [Docket No. 361 of Global Litigation] to the U.S. Court of Appeals for the Ninth Circuit [Case No. 14-55574] ("9th Circuit Appeal").  The 9th Circuit Appeal is currently pending and the parties have filed their initial appellate briefs.

12.     Jenner serves as the Debtor's approved legal counsel for the Global Litigation and 9th Circuit Appeal.[2]

### D. *Insurance Policy*

13.     Darwin National Assurance Company ("Darwin") issued the Insurance Policy to NAC Holdings for the policy period from December 17, 2010, to December 17, 2011, with an annual limit for "Director and Officers Liability" of $10,000,000.[3]  A true and accurate copy of the Insurance Policy, including certain amendments and modifications, is attached as **Exhibit A**.

---

[2] The Debtor will be filing its application to employ several professionals pursuant to 11 U.S.C. § 327(e), which will include Jenner among its designated special counsel.
[3] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Insurance Policy.

14.     Although, NAC Holdings is the "Named Insured" under the Insurance Policy, the Debtor is also included as an "Insured." *See* Item 1, Declarations, II.B and II.D., General Terms and Conditions, and II.M., Coverage Section.

15.     The Global Litigation and 9th Circuit Appeal fall within the Insurance Policy's definition of "Claim" – "judicial, administrative or regulatory proceeding, whether civil or criminal, for monetary, non-monetary or injunctive relief commenced against an Insured, including any appeal therefrom, which is commenced by…service of a complaint or similar proceeding." *See* II.B., Coverage Section.

16.     The Global Judgment generally constitutes a "Loss," however, there is an exclusion that the Insurance Policy "shall not cover any Loss in connection with any Claim…based upon, arising from, or in consequence of any actual or alleged liability of any Insured under any express contract or agreement; provided however, that ***this Exclusion shall not apply…to the payment of Defense Costs in any such Claim against any Company***." *See* III.D., Coverage Section and Endorsement No. 9 (emphasis added).

17.     The Insurance Policy's covered "Defense Costs" include "reasonable and necessary fees, costs, charges or expenses resulting from the investigation, defense or appeal of a Claim…" *See* II.E., Coverage Section.

18.     The Insurance Policy does include a 'wasting policy' provision in that "Defense Costs are part of, and not in addition to, the Limits of Liability…and payment by the Insurer of Defense Costs shall reduce and may exhaust such Limits of Liability. *See* III.F., General Terms and Conditions.

19.     However, there is substantial excess coverage for the Insurance Policy in the unlikely event it is ever necessary.  Illinois National Insurance Company ("IL National") issued

4

an Excess Edge policy to NAC Holdings for the same period of December 17, 2010, to December 17, 2011, with a "Limit of Liability" of $10,000,000 [Policy No. 01-415-97-02] (as subsequently amended or modified, "Excess Policy"). A true and correct copy of the Excess Policy, including certain amendments and modifications, is attached as **Exhibit B**.

20. Throughout the pre-petition course of the Global Litigation, Darwin provided payment directly to Jenner for the Debtor's Defense Costs. There is approximately $3,000,000.00 of available defense costs coverage remaining under the Darwin policy.

21. Jenner has an outstanding payable of $232,718.37 for pre-petition Defense Costs incurred between July 2013 and August 2014. Darwin is requiring a stay relief order prior to issuing payment of the aforesaid pre-petition receivable due Jenner.

### III. REQUEST FOR RELIEF

#### A. *Insurance Policy Proceeds Not Property of the Estate*

22. There is a critical distinction between an actual Insurance Policy and the proceeds payable for the Defense Costs. As the U.S. Bankruptcy Court for the Southern District of New York noted, "it is well settled that a debtor's liability insurance is considered property of the estate…[but] the courts are in disagreement over whether the proceeds of a liability insurance policy are property of the estate." *In re MF Global Holdings Ltd.*, 469 B.R. 177, 190 (Bankr. S.D.N.Y. 2012) (quoting *In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010).

23. The *MF Global* Court went on to hold that "[i]n cases where liability insurance policies provide direct coverage to both directors and officers and debtors…the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution." *Id.* at 190-191.

24.     The U.S. Court of Appeals for the Fifth Circuit addressed this same issue and

holds as follows:

> The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on the claim. When a payment by an insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate.  In other words, when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate.
>
> *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 55-56 (5th Cir. 1993); quoted in *Ochs v. Lipson*, 2000 U.S. Dist. LEXIS 22005, *5-6 (E.D.N.Y.).

25.     The Insurance Policy's proceeds in this case are directly payable to Jenner for

outstanding Defense Costs and as such, the Debtor does ***not*** have a right to receive and keep

those proceeds.  Payment of the Defense Costs will ***not*** have an adverse effect on the estate, but

rather, serve to protect the assets of the estate and interests of all creditors.  Further, since the

Insurance Policy has "a duty to pay defense costs provision, [Darwin]'s obligation to reimburse

[Jenner] attaches as soon as the attorneys' fees are incurred." *In re WorldCom, Inc. Securities*

*Litigation Master File*, 354 F. Supp. 2d. 455, 465 (S.D.N.Y. 2005) (quoting *Wedtech Corp. v.*

*Fed. Ins. Co.*, 740 F. Supp. 214, 221 (S.D.N.Y. 1990)).

26.     The Movants respectfully request that the Bankruptcy Court confirm that

Darwin's payment of pre and post-petition[4] Defense Costs to Jenner under the Insurance Policy

will not violate the automatic stay because such payments do not implicate assets of the Debtor's

estate.

---

[4] Post-petition fees sought by Jenner will be subject to 11 U.S.C. §§ 327, 328 331 and Bankruptcy Rule 2016.

6

### B. *Cause for Stay Relief*

27.     Even if the Bankruptcy Court deems the proceeds for Defense Costs payable under the Insurance Policy an asset of the Debtor's estate, sufficient 'cause' exists to lift the automatic stay to permit Darwin's payment of the Debtor's pre and post-petition Defense Costs to Jenner.  This Insurance Motion is atypical in that the Debtor is one of the Movants seeking stay relief as opposed to a creditor or party-in-interest; usually the Debtor is not the movant or proponent.

28.     As set forth in the Conaway Declaration, the Global Judgment precipitated the filing of this Chapter 11 Case and the Debtor is actively pursuing the 9th Circuit Appeal. *See* ¶¶ 23-25, Docket No. 5.

29.     If Darwin is not permitted to pay the necessary Defense Costs, the prepetition unsecured claims will be increased by the amount of Jenner's prepetition invoices.  Assuming that Jenner is appointed as special counsel, if the stay is not modified as requested, Darwin will continue to withhold payment of Jenner's post-petition invoices, thus increasing the Debtor's administrative liabilities and resources.  There is also the remote chance that "[w]ithout funding, the [Debtor] will be prevented from conducting a meaningful defense…and may suffer substantial and irreparable harm."  *In re Allied Digital Techs. Corp.*, 306 B.R. 505, 514 (Bankr. D. Del. 2004).

30.     As recognized by the Bankruptcy Court for the Eastern District of New York, "[t]he Second Circuit adopted twelve factors for courts to consider when determining the existence of cause for stay relief in order to permit the continuation of prepetition litigation in another forum…[including] whether the debtor's insurer has assumed full responsibility for

7

defending it." *In re Consol. Distribs.*, 2013 Bankr. LEXIS 3101, *29-30 (E.D.N.Y.) (citing *In re Sonnax Indus.*, 907 F.2d 1280, 1286 (2nd Cir. 1990).

31.     On December 2, 2014, this Bankruptcy Court entered an Order "modifying the provisions of the Automatic Stay thereby permitting the Appeal and Amended Appeal to proceed in all respects, including without limitation; the filing of all briefs, reply briefs, sur-reply briefs, motions, the presentation of oral arguments, petitions for rehearing, petitions certiorari all in respect thereof" ("Stay Relief Order").  *See* ¶ 1, Docket No. 104.

32.     Between the substantial risk of harm to the Debtor's estate and the Stay Relief Order already entered, there is more than sufficient "cause" under 11 U.S.C. § 632(d)(2) to lift the automatic stay to permit Darwin's payment of the Debtor's pre and post-petition Defense Costs to Jenner – "[t]he automatic stay, to the extent applicable, therefore should be modified to permit the payment of…Defense Costs."  *In re RC Liquidating Co.*, 2007 Bankr. LEXIS 401, *5 (M.D.N.C.); *see also In re Arter & Hadden, L.L.P.*, 335 B.R. 666, 674 (Bankr. N.D. Ohio 2005) and *In re Cyberamerica, Inc.*, 280 B.R. 12, 18 (Bankr. D. Mass. 2002).

## IV. Reservation of Rights

33.     Nothing in this Insurance Motion shall be construed as a request for authority to assume any executory contract or unexpired lease under 11 U.S.C. § 365, and the Debtor reserves the right to assume or reject any contract in accordance with the applicable provisions of the Bankruptcy Code.

34.     Furthermore, nothing in this Insurance Motion shall be construed as impairing the Debtor's right to contest the validity or amount of any creditor's claim, and the Debtor reserves the right to contest, on non-bankruptcy grounds or otherwise, any amount claimed to be due by any creditor.

8

## V. Waiver of Bankruptcy Rule 6004 (a) and (h)

35.     To the extent applicable and to implement the foregoing immediately, the Movants seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## VI. Notice

36.     The Movants will provide notice of this Insurance Motion to the following: (i) Office of the U.S. Trustee for the Western District of New York; and (ii) parties who have filed a notice of appearance in this case, including proposed counsel to the Official Committee of Unsecured Creditors.  The Movants submit that they do not need to provide any other or further notice.

## VII. No Prior Request

37.     The Movants have not made any prior request for the relief sought in this Insurance Motion to this or any other court.

## VIII. Conclusion

WHEREFORE, the Movants respectfully request that this Court enter an Order, substantially in the form of the *proposed* Order attached hereto as **Exhibit C**, along with such other relief as this Court deems just and proper.

Case 1-14-12414-MJK    Doc 124    Filed 12/18/14    Entered 12/18/14 09:56:14    Desc
Main Document      Page 9 of 10

Dated: December 18, 2014        **HARTER SECREST & EMERY LLP**
       Buffalo, New York

                */s/ Raymond L. Fink*
                Raymond L. Fink, Esq.
                John A. Mueller, Esq.
                · *Counsel to Debtor*
                12 Fountain Plaza, Suite 400
                Buffalo, New York  14202-2293
                (716) 853-1616
                rfink@hselaw.com
                jmueller@hselaw.com

                **JENNER & BLOCK LLP**

                  */s/ Catherine L. Steege*
                Catherine L. Steege, Esq.
                · *Approved Non-Bankruptcy Counsel to Debtor*
                353 N. Clark Street
                Chicago, Illinois 60654-3456
                (312) 923-2952
                csteege@jenner.com