UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

_____

IN RE:

NATIONAL AIR CARGO, INC.,

        DEBTOR.

CHAPTER 11
CASE NO. 1-14-12414-MJK

_____

## CONSENSUAL CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY THE DEBTOR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

| LIPPES MATHIAS WEXLER FRIEDMAN, LLP | PACHULSKI STANG ZIEHL & JONES LLP |
|---|---|
| Raymond L. Fink, Esq. | Robert J. Feinstein, Esq. |
| Johnny A. Mueller, Esq. | Bradford J. Sandler. Esq. |
| 50 Fountain Plaza, Suite 1700 | 780 Third Avenue, 34th Floor |
| Buffalo, NY 14202 | New York, NY 10017 |
| Telephone: (716) 853-5100 | Telephone: (212) 561-7700 |
| Facsimile: (716) 853-5199 | Facsimile: (212) 561-7777 |
| Email: rfink@lippes.com | Email: rfeinstein@PSZJlaw.com |
|       jmueller@lippes.com |       bsandler@PSZJlaw.com |
| · *Counsel to Debtor and Debtor-in-Possession* | · *Counsel to the Official Committee of Unsecured Creditors* |

Dated: September 19, 2017

# TABLE OF CONTENTS

**Pages**

SECTION 1 INTRODUCTION..........................................................................................................5

SECTION 2 DEFINITIONS AND INTERPRETATION ........................................................... 5
    2.1    Definitions ................................................................................................................. 5
    2.2    Undefined Terms ..................................................................................................... 15
    2.3    Interpretation .......................................................................................................... 15
    2.4    Computation of Time .............................................................................................. 15
    2.5    Business Days.......................................................................................................... 15
    2.6    Reference to Monetary Figures .............................................................................. 15
    2.7    Reference to Debtor or Reorganized Company...................................................... 15

SECTION 3 ADMINISTRATIVE AND PRIORITY CLAIMS ............................................... 16
    3.1    Administrative Claims............................................................................................ 16
    3.2    Professional Claims ............................................................................................... 16
    3.3    Priority Tax Claims ................................................................................................. 17
    3.4    United States Trustee Fees ..................................................................................... 17

SECTION 4 CLASSIFICATION OF CLAIMS AND INTEREST ........................................... 17

SECTION 5 TREATMENT OF CLAIMS AND INTERESTS................................................. 19
    5.1    Treatment of Claims and Interest .......................................................................... 19
    5.2    Subordination ......................................................................................................... 21

SECTION 6 ACCEPTANCE OR REJCTION OF THE PLAN ............................................... 21
    6.1    Impaired Classes .................................................................................................... 21
    6.2    Acceptance by a Class ............................................................................................ 22
    6.3    Claims and Interests Not Entitled to Vote.............................................................. 22
    6.4    Cramdown ............................................................................................................... 22

SECTION 7 MEANS FOR IMPLEMENTATION .................................................................. 22
    7.1    Means for Funding the Plan .................................................................................. 22
    7.2    The GUC Administrator .......................................................................................... 25
    7.3    Reorganized Company ........................................................................................... 26
    7.4    Actions Necessary and Appropriate ...................................................................... 26
    7.5    Incentive Plans & Employee/Retiree Benefits ...................................................... 26
    7.6    Event of Default ..................................................................................................... 26
    7.7    Intercompany Claims ............................................................................................. 27

SECTION 8 DISTRIBUTIONS................................................................................................ 27
    8.1    Transfer of Claims ................................................................................................. 27
    8.2    Convenience Claims ............................................................................................... 27
    8.3    Distributions .......................................................................................................... 28
    8.4    Timing .................................................................................................................... 28
    8.5    Interest on Claims .................................................................................................. 28
    8.6    Consent to Different Treatment.............................................................................. 29
    8.7    Setoffs..................................................................................................................... 29
    8.8    Manner of Payment ............................................................................................... 29

Case 1-14-12414-MJK    Doc 832,    Filed 09/20/17,    Entered 09/20/17 18:23:23,
Description: Main Document  , Page 2 of 45

8.9     Delivery ....................................................................................................... 29
8.10   Minimum Distributions ............................................................................... 29
8.11   Allocation of Distributions Between Principal and Interest ........................ 29
8.12   Distributions Free and Clear ...................................................................... 29
8.13   Unclaimed Distributions ............................................................................. 30

SECTION 9 PROCEDURES FOR DISPUTED CLAIMS ....................................... 30
9.1     Allowance of Claims and Interests ............................................................. 30
9.2     Objection Deadline and Prosecution .......................................................... 30
9.3     Estimation of Claims .................................................................................. 30
9.4     No Distributions Pending Allowance .......................................................... 31
9.5     Distributions After Allowance .................................................................... 31

SECTION 10 EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............... 31
10.1   Assumption of Executory Contracts ........................................................... 31
10.2   Cure of Defaults & Objections to Assumption ........................................... 32
10.3   Insurance Policies ....................................................................................... 33
10.4   Survival of Indemnification Obligations .................................................... 33

SECTION 11 CONDITIONS PRECEDENT TO EFFECTIVE DATE ...................... 33
11.1   Conditions Precedent .................................................................................. 33
11.2   Notice ......................................................................................................... 33
11.3   Effect of Failure of Conditions ................................................................... 33

SECTION 12 EFFECT OF CONFIRMATION ....................................................... 34
12.1   Effective Date ............................................................................................. 34
12.2   Vesting of Assets ........................................................................................ 34
12.3   Binding Effect ............................................................................................ 34
12.4   Discharge .................................................................................................... 34
12.5   Compromise and Settlement of Claims, Interests, and Controversies ......... 35
12.6   Injunction .................................................................................................. 35
12.7   Terms of Injunction or Stays ...................................................................... 36
12.8   Injunction Against Interference with Plan ................................................. 36
12.9   Section 525 Injunction ................................................................................ 36
12.10  Releases ...................................................................................................... 36
12.11  Exculpation ................................................................................................ 38
12.12  Release of Liens .......................................................................................... 39
12.13  Dismissal of Adversary Proceedings/Waiver of Avoidance Actions ............ 39
12.14  Dissolution of Committee ........................................................................... 39

SECTION 13 MODIFICATION, REVOCATION OR WITHDRAWAL OF PLAN ............ 40
13.1   Modification ............................................................................................... 40
13.2   Revocation or Withdrawal ......................................................................... 40

SECTION 14 RETENTION OF JURISDICTION .................................................. 40

SECTION 15 MISCELLANEOUS PROVISIONS .................................................. 40
15.1   Governing Law ........................................................................................... 40
15.2   Additional Documents ................................................................................ 40
15.3   Payment of Statutory Fees ......................................................................... 41
15.4   Reservation of Rights ................................................................................. 41

15.5    No Prejudice to Insurance Recovery ................................................................. 41
15.6    Elimination of Vacant Classes ......................................................................... 41
15.7    Successors and Assigns ................................................................................... 41
15.8    Substantial Consummation ............................................................................. 41
15.9    No Tax Advice ................................................................................................ 41
15.10   Entire Agreement ........................................................................................... 42
15.11   Plan Exhibits ................................................................................................... 42
15.12   Severability ..................................................................................................... 42
15.13   Section 1125(e) Good Faith Compliance ....................................................... 42
15.14   Section 1146(a) Exemption ............................................................................ 43
15.15   Notices ............................................................................................................. 43
15.16   Standing ........................................................................................................... 44

Case 1-14-12414-MJK,    Doc 832,    Filed 09/20/17,    Entered 09/20/17 18:23:23,
Description: Main Document  , Page 4 of 45

# SECTION 1  INTRODUCTION

NATIONAL AIR CARGO, INC. and THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS propose the following Chapter 11 Plan of Reorganization pursuant to Section 1121(a) of Title 11 of the United States Code.  Reference is made to the Disclosure Statement for a discussion of the Debtor's history, business, operations, projections, risk factors, a summary and analysis of this Plan and certain related matters.

# SECTION 2  DEFINITIONS AND INTERPRETATION

## 2.1    Definitions

The following terms used herein shall have the respective meanings defined below and may be used in both the singular and plural as appropriate to the context:

**2.1.1    *Administrative Claim*** means a Claim for costs and expenses of administration of the Chapter 11 Case pursuant to Sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate and operating the business of the Debtor; (b) Allowed Professional Claims; and (c) all fees and charges assessed against the Estate pursuant to Section 1930 of Chapter 123 of Title 28 of the United States Code, including, without limitation, all United States Trustee Fee Claims.

**2.1.2    *Adversary Proceedings*** means the Avoidance Actions commenced by the Committee that are pending in the Chapter 11 Case, including the Committee Litigation.

**2.1.3    *Affiliate*** has the meaning set forth in Section 101(2) of the Bankruptcy Code.

**2.1.4    *Aggregate MCA*** means the total amount of all Allowed Other Unsecured Claims, less any Claims that are to be treated as Convenience Claims pursuant to elections made by their Holders under Section 8.2 hereof, reduced by 6% to account for the Maximum Claim Allowance.

**2.1.5    *Alfs*** mean Mr. Alf and Mrs. Alf, collectively.

**2.1.6    *Allowed*** means, with respect to any Claim: (i) a Claim against the Debtor which has been listed on the Debtor's Schedules as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim has been filed or no timely objection to allowance or request for estimation has been interposed; (ii) any Claim for which a Proof of Claim was properly and timely filed in accordance with any order of the Bankruptcy Court, the Plan, the Bankruptcy Code, and the Bankruptcy Rules, as to which no objection to allowance has been interposed by a party in interest by the Claims Objection Deadline or as to which any timely objection has been determined by a Final Order to the extent such objection is determined in favor of the respective Holder; or (iii) any Claim expressly allowed by a Final Order or pursuant to this Plan.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim has been timely filed, is not considered Allowed and

Case 1-14-12414-MJK,   Doc 832,   Filed 09/20/17,   Entered 09/20/17 18:23:23,
Description: Main Document  , Page 5 of 45

shall be expunged on the Effective Date without further action by the Debtor and without any further notice to or action, order or approval of the Bankruptcy Court.

**2.1.7** *Available Insurance Proceeds* means, with respect to any Claim or Cause of Action, the undistributed proceeds of each Insurance Policy that provides coverage with respect to such Claim or Cause of Action.

**2.1.8** *Avoidance Actions* means all avoidance, recovery, subordination, or other claims, actions, or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under Sections 502, 510, 542, 544, 545, and 547 through and including Section 553 of the Bankruptcy Code, regardless of whether or not such actions have been commenced prior to the Effective Date; all voidable transfer, fraudulent conveyance and fraudulent transfer laws; all non-bankruptcy laws vesting in creditors rights to avoid, rescind, or recover on account of transfers, including but not limited to, claims relating to illegal dividends or distributions; all preference laws; the Uniform Voidable Transfer Act (as it may have been codified in any particular jurisdiction); the Uniform Fraudulent Transfer Act (as it may have been codified in any particular jurisdiction); the Uniform Fraudulent Conveyance Act (as it may have been codified in any particular jurisdiction); and all similar federal and state laws and statutes.

**2.1.9** *Ballot* means each of the ballots distributed to each Holder of an Impaired Claim that is entitled to vote to accept or reject the Plan and on which such Holder is to indicate, among other things, acceptance or rejection of the Plan.

**2.1.10** *Bankruptcy Code* means Title 11 of the United States Code, as now in effect or hereafter amended.

**2.1.11** *Bankruptcy Court* means the United States Bankruptcy Court for the Western District of New York having jurisdiction over the Chapter 11 Case.

**2.1.12** *Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of title 28 of the United States Code, and the Local Rules of the Bankruptcy Court, as amended from time to time and applicable to the Chapter 11 Case.

**2.1.13** *Business Day* means day, other than a Saturday, Sunday, or a legal holiday, as defined in Bankruptcy Rule 9006(a).

**2.1.14** *Cash* means cash and cash equivalents, in United States Dollars, including, but not limited to, bank deposits, checks and similar items.

**2.1.15** *Causes of Action* means all claims, actions, causes of action, choses in action, suits, debts, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross-claims (including all claims and any avoidance, recovery, subordination, or other actions against Insiders and/or any other Entities under the Bankruptcy Code, including Avoidance Actions) of the Debtor, the debtor in

possession, and/or the Estate, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, that are or may be pending on the Effective Date or commenced by the Reorganized Company after the Effective Date against any Entity, based in law or equity, including under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order.

      **2.1.16** *Chapter 11 Case* means the case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date in the Bankruptcy Court and having case number 1-14-12414-MJK.

      **2.1.17** *Claim* has the meaning set forth in Section 101(5) of the Bankruptcy Code.

      **2.1.18** *Claims Bar Date* means April 30, 2015, the deadline set by the Bankruptcy Court, pursuant to Bankruptcy Rule 3003(c)(3), for the filing of any Proofs of Claim against the Debtor's Estate in this Chapter 11 Case.

      **2.1.19** *Claims Objection Deadline* means, with respect to General Unsecured Claims, the Confirmation Date.

      **2.1.20** *Claims Register* means the official register of Claims against or Interests in the Debtor maintained by the Bankruptcy Court.

      **2.1.21** *Class* means a category of Holders of Claims or Interests under Section 1122(a) of the Bankruptcy Code.

      **2.1.22** *Committee* means the statutory committee of unsecured creditors appointed in the Chapter 11 Case on or about November 7, 2014, with members: (i) Guthrie Trucking/Brokerage, LLC; (ii) Ground Force Ltd.; (iii) DC Dyna, Inc.; (iv) Key Air LLC; and (v) Global.

      **2.1.23** *Committee Litigation* means the litigation initiated by the Committee against certain Non-Debtor Affiliates, the Alfs and the Individual Defendants, pending in the Bankruptcy Court under adversary proceeding number 16-01081 (MJK).

      **2.1.24** *Confirmation* means the entry of the Confirmation Order on the docket of the Chapter 11 Case.

      **2.1.25** *Confirmation Date* means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

      **2.1.26** *Confirmation Hearing* means the hearing(s) before the Bankruptcy Court under Section 1128 of the Bankruptcy Code at which the Plan Proponents seek entry of the Confirmation Order.

      **2.1.27** *Confirmation Order* means the order of the Bankruptcy Court confirming the Plan under Section 1129 of the Bankruptcy Code.

Case 1-14-12414-MJK    Doc 832    Filed 09/20/17    Entered 09/20/17 18:23:23,
Description: Main Document , Page 7 of 45

**2.1.28** *Consummation* means the occurrence of the Effective Date.

**2.1.29** *Convenience Claims* means each Claim of a Holder of an Other Unsecured Claim that is: (i) less than or equal to $30,000 in value; or (ii) greater than $30,000 in value but which has been voluntarily reduced by its Holder to $30,000, that will be satisfied in full on the Effective Date pursuant to a Cash distribution equal to sixty percent (60%) of such Allowed Claim at the election of its Holder, and in such Holder's sole discretion, made by the Holder by affirmatively checking the appropriate box on its Ballot as set forth in Section 8.2 of this Plan.

**2.1.30** *Convenience Class Payment* means the amount distributed by the Disbursing Entities on the Effective Date to the Holders of Convenience Claims in accordance with the procedure set forth in Section 8.2 of this Plan.

**2.1.31** *Convenience Class Treatment* means the treatment of Convenience Claims provided for in this Plan.

**2.1.32** *Creditor* has the meaning set forth in Section 101(10) of the Bankruptcy Code.

**2.1.33** *Cure* means a Claim (unless waived or modified by the applicable counterparty) based upon the Debtor's default under an Executory Contract assumed under Section 365 of the Bankruptcy Code, other than a default which is not required to be cured pursuant to Section 365(b)(2) of the Bankruptcy Code.

**2.1.34** *Debtor* means National Air Cargo, Inc., a New York registered corporation and the debtor in this Chapter 11 Case.

**2.1.35** *Disclosure Statement* means the disclosure statement for the Plan as may be amended, supplemented or modified from time to time, including all exhibits and schedules thereto, to be approved by the Confirmation Order.

**2.1.36** *Disbursing Entities* means the Alfs and Non-Debtor Affiliates.

**2.1.37** *Disputed* means, as to a Claim or Interest, or any portion thereof, that: (i) is not Allowed; (ii) is not disallowed under the Plan, the Bankruptcy Code, or a Final Order; (iii) is the subject of an objection or request for estimation filed in the Bankruptcy Court and which objection or request for estimation has not been withdrawn or overruled by a Final Order of the Bankruptcy Court; or (iv) is otherwise disputed by the Debtor or the Reorganized Company in accordance with applicable law, which dispute has not been withdrawn, resolved or overruled by Final Order.

**2.1.38** *Effective Date* means such date designated by the Debtor and the Committee no later than the first Business Day after the Confirmation Date on which the conditions precedent specified in Section 11.1 herein, including the payment of the Initial Payments, have either been satisfied or waived or in the case of the Initial Payments, have been funded. In no event, shall the Effective Date be more than thirty (30) days after the date the Confirmation Order becomes a Final Order, unless extended by Order of the Bankruptcy Court on consent of the Plan Proponents.

**2.1.39** *Entity* has the meaning set forth in Section 101(15) of the Bankruptcy Code.

**2.1.40** *Estate* means the bankruptcy estate of the Debtor created under Sections 301 and 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

**2.1.41** *Event of Default* means the non-payment of the New Value Contribution as and when required to be made by the Disbursing Entities or other non-monetary default under the terms of this Plan.

**2.1.42** *Executory Contract* means contract or lease to which the Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

**2.1.43** *Final Decree* means the decree contemplated under Bankruptcy Rule 3022.

**2.1.44** *Final Order* means an order or judgment of the Bankruptcy Court entered by the clerk of the Bankruptcy Court on the docket in the Chapter 11 Case that is: (i) no longer subject to review, reversal, modification, or amendment by appeal or writ of certiorari, under applicable Bankruptcy Rules or statutes; and (ii) not subject to any stay or injunction against its effectiveness or enforcement.

**2.1.45** *General Unsecured Claim* means any Claim other than an Administrative Claim, Professional Claim, Priority Tax Claim, or Other Priority Claim.

**2.1.46** *Global* means Global BTG LLC, a Nevada limited liability company.

**2.1.47** *Global Claim* means the unsecured judgment granted in the Global Litigation, on or about April 24, 2014, in favor of Global and against the Debtor for $10,059,558.19, which is deemed Allowed pursuant to this Plan.

**2.1.48** *Global Guaranty Agreement* means an agreement documenting the guarantee by the Securing Parties of the Residual Settlement Payment, which agreement shall be in a form and substance acceptable to Global.

**2.1.49** *Global Litigation* means the civil litigation initiated by Global against Debtor in the U.S. District Court for the Central District of California and having case number 2:11-cv-01657-JGB-JCG.

**2.1.50** *Global Payment Schedule* means payment of the Initial Global Payment on the Effective Date, with the Residual Settlement Payment to be paid over three (3) years in quarterly installments commencing December 31, 2017; provided, however, that the total settlement amount shall be reduced according to the Global Settlement Amount Reduction Schedule, as appropriate.

**2.1.51** *Global Security Package* shall have the meaning ascribed to it in Section 7.1.4.2 hereof.

**2.1.52** *Global Settlement Amount Reduction Schedule* means the reduction of the Global settlement amount by: (i) $700,000 if the settlement is paid in full by the Effective Date;

9

(ii) $500,000 if the settlement is paid in full by December 31, 2017; or (iii) $200,000 if the settlement is paid in full by December 31, 2018.

**2.1.53** *Global Stipulated Judgment* means the form of stipulated judgment executed by the Securing Parties for the benefit of Global that admits to liability with respect to the Residual Settlement Payment, which judgment shall be in a form and substance acceptable to Global.

**2.1.54** *Governmental Unit* has the meaning set forth in Section 101(27) of the Bankruptcy Code.

**2.1.55** *GUC Administrator* means the administrator selected by the Committee for the benefit of the Holders of Other Unsecured Claims.

**2.1.56** *GUC Guaranty Agreement* means an agreement documenting the guarantee by the Securing Parties of the MCA Payment, which agreement shall be in form and substance acceptable to the Committee.

**2.1.57** *GUC Payment Schedule* means payment of the Initial GUC Payment on the Effective Date, with the MCA Payment to be paid over three (3) years in quarterly installments commencing December 31, 2017.

**2.1.58** *GUC Security Package* shall have the meaning ascribed to it in Section 7.1.4.1 hereof.

**2.1.59** *GUC Stipulated Judgment* means the form of stipulated judgment executed by the Securing Parties for the benefit of the Holders of Allowed Other Unsecured Claims that did not elect Convenience Class Treatment that admits to liability with respect to the MCA Payment, which judgment shall be in form and substance acceptable to the Committee.

**2.1.60** *Holder* means the Person who has the legal right to enforce a negotiable instrument.

**2.1.61** *Impaired* means, with respect to any Class of Claims or Interests, a Claim or an Interest that is not Unimpaired.

**2.1.62** *Individual Defendants* means all of the individual defendants, other than the Alfs, sued by the Committee in the Committee Litigation: (i) Glen Joerger; (ii) Jacob Mathew; (iii) Robert D. Bishop, Jr.; (iv) John Baker; (v) Brian Conaway; (vi) Shirley Kaufman; (vii) Preston Murray; and (viii) William Mortensen.

**2.1.63** *Initial Global Payment* means $6,000,000 paid to Global on the Effective Date by the Disbursing Entities.

**2.1.64** *Initial GUC Payment* means $500,000 paid by the Disbursing Entities on the Effective Date to the Holders of Allowed Other Unsecured Claims on a pro rata basis.

**2.1.65  *Initial Payments*** mean the Initial Global Payment, the Initial GUC Payment and the Initial Professional Payment, collectively.

**2.1.66  *Initial Professional Payment*** means $500,000 paid by the Disbursing Entities on the Effective Date to the Holders of Allowed Professional Claims on a pro rata basis.

**2.1.67  *Insider*** has the meaning set forth in Section 101(31) of the Bankruptcy Code.

**2.1.68  *Insider Claims*** means any Claim or Cause of Action held by an Insider.

**2.1.69  *Insurance Policies*** means any and all insurance policies that may provide coverage for any loss in connection with a Claim against the Debtor.

**2.1.70  *Intercompany Claims*** means any Claim or Cause of Action held by a Non-Debtor Affiliate against the Debtor.

**2.1.71  *Intercompany Transactions*** means the ordinary course transactions between the Debtor and Non-Debtor Affiliates.

**2.1.72  *Interest*** means any equity security in the Debtor existing immediately prior to the Effective Date.

**2.1.73  *Internal Revenue Code*** means Title 26 of the United States Code, as now in effect or hereafter amended.

**2.1.74  *IRS*** means the Internal Revenue Service.

**2.1.75  *Lien*** has the meaning set forth in Section 101(37) of the Bankruptcy Code.

**2.1.76  *Local Rules*** means the *United States Bankruptcy Court Western District of New York Local Rules of Bankruptcy Procedure* originally effective May 13, 1997, and as amended from time to time.

**2.1.77  *Maximum Claim Allowance*** means, unless the parties consent or otherwise agree, ninety-four percent (94%) of the full amount of any General Unsecured Claim due and owning, not including the Global Claim, Intercompany Claims, Insider Claims and Convenience Claims.

**2.1.78  *MCA Payment*** means a sum equal to the Aggregate MCA *less* the Initial GUC Payment to be paid by the Disbursing Entities to the Holders of Allowed Other Unsecured Claims according to the schedule set forth in the GUC Payment Schedule.

**2.1.79  *Mr. Alf*** means Christopher J. Alf.

**2.1.74  *Mrs. Alf*** means Lori Alf.

**2.1.75  *National Holdings*** means National Air Cargo Holdings, Inc., a Florida corporation that is the parent and sole shareholder of the Debtor.

**2.1.76** *New Value Contribution* means the Cash contributions made by the Alfs and Non-Debtor Affiliates on behalf of themselves and the Debtor to fund distributions contemplated by this Plan, including the Initial Global Payment, the Initial GUC Payment, the Initial Professional Payment, the Convenience Class Payment, the Residual Settlement Payment, the MCA Payment, and the Residual Professional Payment.

**2.1.77** *Non-Debtor Affiliates* means Affiliates of the Debtor sued by the Committee in the Committee Litigation: (i) Windward Drive Lot 12, LLC; (ii) National Air Cargo Holdings, Inc.; (iii) National Air Cargo GmbH; (iv) National Air Cargo S.a.r.l.; (v) NACM OHQ SDN BHD; (vi) NACM Holdings SDN BHD; (vii) National Air Cargo KK; (viii) National Air Cargo LLC; (ix) National Air Cargo Limited; (x) National Air Cargo Nederland BV; (xi) National Air Cargo Middle East FZE (DWC Branch) LLC; (xii) NAC Acquisitions, LLC; (xiii) NAC AC Ventures LLC; (xiv) NAC 300 LLC; (xv) NAC 500; (xvi) National Air Cargo Group (d/b/a National Airlines); (xvii) Braxton Acquisitions LLC; (xviii) LA 45 Equipment LLC; (xix) National Brokerage LLC; (xx) Tracking Innovations, Inc.; and (xxi) NACG Leasing, LLC.

**2.1.78** *Officers of the Debtor* means the current officers of the Debtor, or any successor thereto, in their capacity as "Officers" of the Debtor or Reorganized Company as that term is defined in the Debtor's by-laws.

**2.1.79** *Other Priority Claims* means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in payment as specified in Sections 507(a)(2), (3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

**2.1.80** *Other Unsecured Claims* means all General Unsecured Claims except for the Global Claim, unsecured Intercompany Claims and Insider Claims.

**2.1.81** *Person* has the meaning set forth in Section 101(41) of the Bankruptcy Code.

**2.1.82** *Petition Date* means October 17, 2014, the date of the filing by the Debtor of its petition for relief under Chapter 11 of the Bankruptcy Code.

**2.1.83** *Plan* means this chapter 11 plan, as it may be altered, amended, modified or supplemented from time to time, including the Plan Supplement and all exhibits, supplements, appendices and schedules.

**2.1.84** *Plan Proponents* means, collectively, the Debtor and the Committee.

**2.1.85** *Plan Secured Parties* shall have the meaning ascribed to it in Section 7.6 of this Plan.

**2.1.86** *Plan Supplement* means any compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan, which shall be filed by the Debtor no later than seven (7) days prior to any date scheduled for the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, and additional documents filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.

2.1.87 ***Priority Tax Claim*** means any Claim of a Governmental Unit of the specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

2.1.88 ***Professional*** means an Entity employed in the Chapter 11 Case in accordance with Sections 327 and 1123 of the Bankruptcy Code or otherwise, pursuant to a Final Order of the Bankruptcy Court.

2.1.89 ***Professional Claim*** means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under Sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

2.1.90 ***Proof of Claim*** means a proof of Claim filed against the Debtor in the Chapter 11 Case (conforming substantially to Official Bankruptcy Form No. 10), together with accompanying documentation.

2.1.91 ***Professional Guaranty Agreement*** means an agreement documenting the guarantee by the Securing Parties of the Residual Professional Payment, which agreement shall be in form and substance acceptable to the Committee and each Professional. Each Professional shall have its own Professional Guaranty Agreement should it so require.

2.1.92 ***Professional Payment Schedule*** means payment of the Initial Professional Payment on the Effective Date, with the Residual Professional Payment to be paid over one (1) year in quarterly installments commencing December 31, 2017.

2.1.93 ***Professional Security Package*** shall have the meaning ascribed to it in Section 7.1.4.3 hereof.

2.1.94 ***Professional Stipulated Judgment*** means the form of stipulated judgment executed by the Securing Parties for the benefit of each Professional on account of its Allowed Professional Claim that admits to liability with respect to the Residual Professional Payment, which judgment shall be in form and substance acceptable to the Committee and each Professional. Each Professional shall have its own Professional Stipulated Judgment should it so require.

2.1.95 ***Related Persons*** means any Entity's successors, assigns, direct and indirect subsidiaries, affiliates, and funds, and current and former members, partners, managers, managing members, officers, directors, employees, advisors, principals, attorneys, professionals, accountants, financial advisor, investment bankers, consultants, agents and other representatives.

2.1.96 ***Released Party*** means each of the following in its/their capacity as such: (i) Debtor; (ii) Non-Debtor Affiliates; (iii) Reorganized Company; (iv) Committee; (v) Global; (vi) Mr. Alf; (vii) Mrs. Alf; (viii) the Individual Defendants; and (ix) with respect to each of the foregoing Entities in clauses (i) through (v), such Entity's successors, assigns, direct and indirect subsidiaries, affiliates, and funds, and current and former members, partners, managers, managing members, officers, directors, employees, advisors, principals, attorneys, professionals, accountants, financial advisors, investment bankers, consultants, agents and other representatives of any of the foregoing.

**2.1.97** *Releasing Parties* means each Holder of a Claim that is entitled to receive a distribution under the Plan and the Committee and all parties derivative to the foregoing.

**2.1.98** *Reorganized Company* means the Debtor as it shall exist on and after the Effective Date.

**2.1.99** *Residual Professional Payment* means the total sum to be paid by the Disbursing Entities to the Professionals on account of their Allowed Professional Claims *less* the Initial Professional Payment, on the schedule set forth in the Professional Payment Schedule.

**2.1.100** *Residual Settlement Payment* means the sum of $3.5 million to be paid by the Disbursing Entities to Global on the schedule set forth in the Global Payment Schedule; provided, however, that the Global settlement amount shall be reduced as provided in the Global Settlement Amount Reduction Schedule, as appropriate.

**2.1.101** *Schedules* means the Schedules of Assets and Liabilities, the Schedules of Executory Contracts and Unexpired Leases and the Statement of Financial Affairs filed by the Debtor pursuant to Section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such statements and schedules have been or may be supplemented or amended through the Confirmation Date.

**2.1.102** *Securing Parties* means the Debtor, Mr. Alf and the U.S. Affiliates.

**2.1.103** *Security Packages* means, collectively, the GUC Security Package, the Global Security Package and the Professional Security Package.

**2.1.104** *Shareholder Interest* means National Holdings' one hundred percent (100%) equity ownership of the Debtor.

**2.1.105** *Unimpaired* means a Class of Claims or Interests that is unimpaired within the meaning of Section 1124 of the Bankruptcy Code.

**2.1.106** *U.S. Affiliates* means the Non-Debtor Affiliates based in the United States.

**2.1.107** *United States Trustee Fees* means all fees payable pursuant to Section 1930 of Title 28 of the United States Code and any applicable interest thereon.

**2.1.108** *Voting Deadline* means the date set forth in the Bankruptcy Court's Order approving the Disclosure Statement that sets the deadline for the submission of Ballots by Holders of Claims entitled to vote to accept or reject the Plan.

**2.1.109** *Voting Record Date* means the date set forth in the Bankruptcy Court's order approving the Disclosure Statement that determines which Holders of Claims are entitled to vote to accept or reject the Plan.

## 2.2    Undefined Terms

A term used in this Plan that is not defined in this Plan shall have the meaning ascribed to that term in the Bankruptcy Code.

## 2.3    Interpretation

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan, as the same may be amended, waived, or modified from time to time. For purposes of the Plan, the following rules of interpretation apply: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (ii) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (iii) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (iv) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (v) captions and headings are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (vi) unless otherwise specified herein, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (vii) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

## 2.4    Computation of Time

Bankruptcy Rule 9006(a) applies in computing any period of time prescribed or allowed herein.

## 2.5    Business Days

In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

## 2.6    Reference to Monetary Figures

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

## 2.7    Reference to Debtor or Reorganized Company

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtor or Reorganized Company mean the Debtor and the Reorganized Company, as applicable, to the extent the context requires.

# SECTION 3  ADMINISTRATIVE AND PRIORITY CLAIMS

## 3.1    Administrative Claims

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtor or Reorganized Company, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Claims and Claims for fees and expenses pursuant to 28 U.S.C. § 1930) will receive in full and final satisfaction of its Administrative Claim an amount of Cash from the Disbursing Entities equal to the amount of such Allowed Administrative Claim: (i) on the Effective Date or as soon thereafter as is reasonably practicable or, if not then due, when such Allowed Administrative Claim is due or as soon thereafter as is reasonably practicable; (ii) if an Administrative Claim is Allowed after the Effective Date, on the date such Administrative Claim is Allowed or as soon thereafter as is reasonably practicable or, if not then due, when such Allowed Administrative Claim is due; or (iii) at such time and upon such terms as set forth in an order of the Bankruptcy Court.  All Administrative Claims for which no application is timely filed shall be forever barred.  Notwithstanding the foregoing, all United States Trustee Fees will be satisfied on or before the Effective Date without need for the filing of an application, and all Professional Claims will be paid in accordance with Section 3.2 hereof.

The Holder of an Administrative Claim, other than: (i) a Professional Claim; (ii) a liability incurred but not yet due and payable in the ordinary course of business by the Debtor until after the thirtieth (30th) day after the Effective Date; (iii) an Administrative Claim that has been Allowed on or before the Effective Date; (iv) an expense or liability incurred in the ordinary course of business by the Reorganized Company on or after the Effective Date; or (v) United States Trustee Fees, must file with the Bankruptcy Court and serve on the Reorganized Company and the Office of the United States Trustee, a request for payment of such Administrative Claim, together with supporting documentation, so as to be received on or before the date that is the first Business Day that is twenty-one (21) days after the Effective Date.  Failure to file and serve such request for payment timely and properly shall result in the Administrative Claim being forever barred and discharged.

## 3.2    Professional Claims

Upon agreement of each Professional and the Debtor, each Professional will receive, on account of its Allowed Professional Claim, its pro rata share of the Initial Professional Payment on the Effective Date.  The remainder of the amounts owed to the Professionals on account of their Allowed Professional Claims shall be paid by the Disbursing Entities on the schedule set forth in the Professional Payment Schedule, until the Allowed Professional Claims are paid in full.  The Residual Professional Payment is secured by the Professional Security Package.[1]

All final requests by Professionals for payment of Professional Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed no later than forty-five (45) days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the

---

[1] For the avoidance of doubt, a Professional may choose, in its sole discretion, to waive any requirement that it be provided a Professional Guaranty Agreement or Professional Stipulated Judgment to secure the Residual Professional Payment.

Case 1-14-12414-MJK    Doc 832    Filed 09/20/17    Entered 09/20/17 18:23:23,
Description: Main Document  , Page 16 of 45

procedures established by the Bankruptcy Code. The Disbursing Entities shall pay Professional Claims in Cash in the amount Allowed by the Court as set forth in this Section 3.2. From and after the Effective Date, any requirement that Professionals comply with Sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Company may employ and pay any Professional in the ordinary course of business without any further notice to, or action, order, or approval of, the Bankruptcy Court.

### 3.3    Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment or has been paid by the Debtor prior to the Effective Date, in full and final satisfaction, settlement, release, and discharge of and in exchange for release of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive on account of such Claim, payment in Cash from the Disbursing Entities in an amount equal to the amount of such Allowed Priority Tax Claim as soon as reasonably practicable following the later of: (i) the Effective Date; or (ii) the date upon which the Priority Tax Claim becomes Allowed. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtor and Holder of such Claim, or as may be due and payable under applicable non-bankruptcy law, or in the ordinary course of business.

Any Claims asserted by any governmental unit on account of any fees, penalties and assessments shall not be Priority Tax Claims and shall be subordinated to General Unsecured Claims. On the Effective Date, any Liens securing any Allowed Priority Tax Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

### 3.4    United States Trustee Fees

All fees payable pursuant to Section 1930 of Title 28 of the United States Code and any applicable interest thereon that are due and payable as of the Effective Date shall be paid by the Disbursing Entities or the Debtor in full in Cash on the Effective Date or as soon thereafter as is reasonably practicable. All such fees and any applicable interest thereon that becomes due and payable after the Effective Date shall be paid by the Disbursing Entities or Reorganized Debtor when such fees become due and payable. All such fees and any applicable interest thereon shall continue to become due and payable until the entry of a final decree closing the Chapter 11 Case or conversion or dismissal of the Chapter 11 Case, whichever is earlier.

## SECTION 4  CLASSIFICATION OF CLAIMS AND INTEREST

The following table designates the Classes of Claims and Interest against the Debtor and specifies whether each such Class is: (i) Impaired or Unimpaired by the Plan; and (ii) entitled to vote to accept or reject the Plan in accordance with Section 1126 of the Bankruptcy Code. The table also designates, where applicable, those Impaired Classes deemed to reject this Plan in accordance with Section 1126 of the Bankruptcy Code. The Bankruptcy Code provides that

Case 1-14-12414-MJK    Doc 832    Filed 09/20/17    Entered 09/20/17 18:23:23,
Description: Main Document  , Page 17 of 45

Unimpaired Classes are conclusively presumed to accept this Plan, and therefore, solicitation of acceptance from such Classes is not required.

A Claim is placed in a particular Class only to the extent that such Claim falls within the designation of that Class, and is classified in other Classes to the extent that any portion of the Claim falls within the designation of such other Classes.

| Class | Designation | Treatment | Entitled to Vote | Entitled Range of Recovery under the Plan |
|-------|-------------|-----------|------------------|-------------------------------------------|
| --- | Administrative Claims | Payment in full or consent to other treatment | No | 100% |
| --- | Professional Claims | Payment in full or consent to other treatment | No | 100% |
| --- | Priority Tax Claims | Payment in full or consent to other treatment | No | 100% |
| --- | United States Trustee Fees | Payment in full or consent to other treatment | No | 100% |
| 1 | Other Priority Claims | Unimpaired | No (Presumed to Accept) | 100% |
| 2 | Unsecured Global Claim | Impaired | Yes | 88% - 94% |
| 3 | Other Unsecured Claims | Impaired | Yes | 60% - 94% |
| 4 | Intercompany Claims | Unimpaired | No (Presumed to Accept) | Claims Ride Through |
| 5 | Shareholder Interests | Unimpaired | No (Presumed to Accept) | Interests Retained |

# SECTION 5  TREATMENT OF CLAIMS AND INTERESTS

## 5.1  Treatment of Claims and Interest

Except to the extent that a Holder of an Allowed Claim or Interest, as applicable, agrees to a less favorable treatment, such Holder shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release and discharge of and in exchange for such Holder's Allowed Claim against or Interest in the Debtor, as applicable.

### 5.1.1  Class 1 – Other Priority Claims

(1) *Classification*: Class 1 consists of any Other Priority Claims against the Debtor.

(2) *Treatment*: Each Holder of an Allowed Other Priority Claim that has not been paid in full prior to the Effective Date shall be paid in full in Cash within thirty (30) days after the following: (i) the Effective Date; or (ii) the date such claim is deemed an Allowed Claim, whichever is later.

(3) *Voting*: Class 1 is Unimpaired.  Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

### 5.1.2  Class 2 – Unsecured Global Claim

(1) *Classification*: Class 2 consists of the Global Claim against the Debtor.

(2) *Treatment*:  The Global Claim is deemed Allowed.  Global shall receive the Initial Global Payment on the Effective Date.  In addition, Global shall receive the Residual Settlement Payment in installment payments as set forth in the Global Payment Schedule; provided, however, that the Global settlement amount shall be reduced as provided in the Global Settlement Amount Reduction Schedule, as appropriate.  Interest on the Residual Settlement Payment shall accrue at 6% per annum from the Effective Date until the Holder's Claim is satisfied. The Residual Settlement Payment is secured by the Global Security Package.

(3) *Voting*: Class 2 is Impaired.  The Holder of the Global Claim is entitled to vote to accept or reject the Plan.

### 5.1.3  Class 3 – Other Unsecured Claims

(1)    *Classification*: Class 3 consists of all General Unsecured Claims against the Debtor not including the Global Claim, unsecured Intercompany Claims and Insider Claims.

(2)    *Default Treatment*:  Each Holder of an Allowed Other Unsecured Claim shall receive Cash equal to the Maximum Claim Allowance (*i.e.* 94% of the full amount of such Allowed Claim) in installment payments as set forth in the GUC Payment Schedule.  Specifically, each Holder of an Allowed Other Unsecured Claim shall receive: (i) an allocable pro rata share of the Initial GUC Payment on the Effective Date; and (ii) its allocable pro rata share of the Aggregate MCA on the schedule set forth in the GUC Payment Schedule up to the Maximum Claim Allowance.  Interest on the MCA Payment shall accrue at 6% per annum from the Effective Date until the Holder's Claim is satisfied.  The MCA Payment is secured by the GUC Security Package.

*Alternate Treatment (Requires Affirmative Election on Ballot):* In the alternative, each Holder: (i) of an Allowed Other Unsecured Claim that is less than or equal to $30,000 in value; or (ii) of an Allowed Other Unsecured Claim that is greater than $30,000 in value but who voluntarily elects to reduce such Claim to $30,000, may elect, in its sole discretion, to receive sixty percent (60%) of its Allowed Claim in Cash on the Effective Date in full satisfaction of such Claim.  Each Holder of an Other Unsecured Claim that elects to receive this Alternate Treatment must check the box on the Ballot to receive this Alternate Treatment, or else such Holder shall receive the Default Treatment for Other Unsecured Claims.

(3)    *Voting*: Class 3 is Impaired.  Holders of Other Unsecured Claims are entitled to vote to accept or reject the Plan.

### 5.1.4    Class 4 – Intercompany Claims

(1)    *Classification*: Class 4 consists of all Intercompany Claims.

(2)    *Treatment*:  Holders of Intercompany Claims shall not receive any specific distribution under this Plan on account of such Claims.  Intercompany Claims will, however, remain in place and will not be discharged in the Chapter 11 Case pursuant to this Plan, the Confirmation Order, the Bankruptcy Code or otherwise.  The Non-Debtor Affiliates and the Debtor shall be free to continue intercompany relationships and Intercompany Transactions; provided, however, that no Intercompany Transaction shall impair the Disbursing Entities' ability to make any payments contemplated under this Plan.

(3) *Voting*: Class 4 is Unimpaired. Holders of Intercompany Claims are conclusively presumed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

### 5.1.6 Class 5 – Shareholder Interest

(1) *Classification*: Class 5 consists of the Shareholder Interest.

(2) *Treatment*: National Holdings shall retain its shares pursuant to its and the Disbursing Entities' substantial contributions to fund the Plan in the form of contributions to unsecured creditors, subject to the releases set forth in Section 12.10.2 of this Plan.

(3) *Voting*: Class 5 is Unimpaired pursuant to Section 1124(l) of the Bankruptcy Code. Holders of Shareholder Interests Claims are conclusively presumed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

## 5.2 Subordination

The allowance, classification, and treatment of all Claims and Interests under the Plan shall conform to and with the respective contractual, legal, and equitable subordination rights of such Claims and Interests, and the Plan shall recognize and implement any such rights. Pursuant to Section 510 of the Bankruptcy Code, except where otherwise provided herein, the Reorganized Company reserves the right, after notice and a hearing, to re-classify any Allowed Claim in accordance with any contractual, legal or equitable subordination relating thereto.

## SECTION 6 ACCEPTANCE OR REJCTION OF THE PLAN

### 6.1 Impaired Classes

Pursuant to Section 1126 of the Bankruptcy Code, each Impaired Class of Claims or Interests that will receive a distribution pursuant to this Plan may vote separately to accept or reject this Plan. Each Holder of an Allowed Claim in an Impaired Class of Claims as of the Voting Record Date that is entitled to vote shall receive a Ballot and may cast a vote to accept or reject this Plan.

#### 6.1.1 Unsecured Global Claim (Class 2)

Global is entitled to vote to accept or reject the Plan.

#### 6.1.2 Other Unsecured Claims (Class 3)

Holders of Claims in Class 3 are entitled to vote if: (i) the Debtor has listed such Claim on its Schedules and such Claim is not scheduled as disputed, contingent, or unliquidated; (ii) no objection has been filed as to such Holder's Claim, either before or after the Voting Record Date;

or (iii) the Holder of such Claim has filed a Proof of Claim on or before the applicable Claims Bar Date, except where the Debtor has specifically agreed to a late-filed Proof of Claim.

Any Claim in Class 3 to which an objection is filed and not withdrawn or dismissed is not entitled to vote, regardless of whether a Ballot was transmitted to the Holder of such Claim, unless the Bankruptcy Court, pursuant to Bankruptcy Rule 3018(a), and upon application of the Holder whose Claim was objected to, temporarily allows the Claim in an amount that the Bankruptcy Court deems proper solely for the purpose of voting on the Plan.

### 6.2     Acceptance by a Class

A Class of Claims entitled to vote to accept or reject this Plan shall be deemed to accept this Plan if the Holders of Claims in such voting Class that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Claims that vote in such Class vote to accept this Plan. Classes 1, 4 and 5 are Unimpaired under this Plan and are, therefore, conclusively presumed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code.

### 6.3     Claims and Interests Not Entitled to Vote

Holders of Claims are not entitled to vote if, as of the Voting Record Date, the Claim: (i) has been disallowed; (ii) is the subject of a pending objection; or (iii)(a) was not listed on the Debtor's Schedules or was listed on the Debtor's Schedules as unliquidated, contingent or disputed, and (b) a Proof of Claim was not filed or was filed for an unliquidated, contingent or disputed Claim, unless on or before the Voting Record Date the Bankruptcy Court enters a Final Order directing otherwise. However, if a Claim is disallowed in part, the Holder shall be entitled to vote the Allowed portion of the Claim. Insiders are entitled to vote on the Plan subject to and in accordance with the Bankruptcy Code.

The Plan Proponents may disregard a vote if the Bankruptcy Court determines, pursuant to Section 1126(e) of the Bankruptcy Code, that it was not solicited or procured in good faith, or in accordance with the provisions of the Bankruptcy Code.

### 6.4     Cramdown

The Plan Proponents request confirmation under Section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept this Plan pursuant to Section 1126 of the Bankruptcy Code. The Plan Proponents reserve the right to modify this Plan to the extent, if any, that confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

## SECTION 7   MEANS FOR IMPLEMENTATION

### 7.1     Means for Funding the Plan

#### 7.1.1     Funding Overview

Holders of Administrative Claims, Priority Tax Claims and the United States Trustee Fees will be paid by the Disbursing Entities as set forth in Section 3 above. Upon agreement of the Professionals and the Debtor, the Professionals will receive, on account of their Allowed

Professional Claims, their pro rata shares of the Initial Administrative Payment on the Effective Date. The remainder of the amounts owed to the Professionals shall be paid by the Disbursing Entities on the schedule set forth in the Professional Payment Schedule until the Allowed Professional Claims are paid in full. Each Holder of an Allowed Other Priority Claim which has not been paid in full prior to the Effective Date shall be paid in full by the Disbursing Entities in Cash within thirty (30) days of the following: (i) the Effective Date; or (ii) the date such claim is deemed an Allowed Claim, whichever is later. In addition, the Disbursing Entities have agreed to contribute the sum of $9.5 million (subject to adjustment as provided herein), plus a sum equal to the Aggregate MCA and the Convenience Class Payment, respectively, to fund Plan distributions to Classes 2 and 3, as set forth in more detail in Section 7.1.2 below.

Incorporated herein by reference is the *Declaration of Michael Tew Regarding Disclosure Statement and Plan* [Docket No. 823] (the "Tew Declaration"), which provides additional detail regarding the source of plan funding. The Tew Declaration is included in the Plan solicitation materials.

### 7.1.2    Contributions from the Non-Debtor Affiliates and Alfs

In exchange for the releases set forth in Section 12.10.2 below, and subject to the retention of equity by National Holdings, the Alfs and the Non-Debtor Affiliates will contribute the New Value Contribution to fund distributions contemplated under this Plan.[2] Specifically with respect to funding distributions to Holders of Allowed Claims in Classes 2 and 3, the Alfs and Non-Debtor Affiliates have agreed to contribute the sum of $9.5 million (subject to adjustment as provided herein), a sum equal to the Aggregate MCA and the Convenience Class Payment, respectively, as set forth in Sections 5.1.2 and 5.1.3 above. Further, the Alfs and Non-Debtor Affiliates have agreed to fund distributions to Professionals on account of their Allowed Professional Claims on the schedule set forth in the Professional Payment Schedule and discussed in more detail in Section 3.2 above.

Subject to the preceding paragraph, the New Value Contribution shall be funded by the Disbursing Entities on behalf of themselves and the Debtor as follows: (i) the Initial Global Payment shall be made to Global on or prior to the Effective Date; (ii) the Initial GUC Payment shall be made to the Holders of Allowed Other Unsecured Claims on or prior to the Effective Date on a pro rata basis; (iii) the Convenience Class Payment shall be made to the Holders of Convenience Claims on the Effective Date; (iv) the Initial Professional Payment shall be made on a pro rata basis to each Professional on the Effective Date; (v) the Residual Settlement Payment shall be paid to Global on the schedule set forth in the Global Payment Schedule; provided, however, that the Global settlement amount shall be reduced as provided in the Global Settlement Amount Reduction Schedule, as appropriate; (vi) the MCA Payment shall be paid to Holders of Allowed Other Unsecured Claims on the schedule set forth in the GUC Payment Schedule; and (vii) the Residual Professional Payment shall be paid to the Professionals on the schedule set forth in the Professional Payment Schedule. Interest on the Residual Settlement Payment and the MCA Payment shall accrue at 6% per annum. The Residual Settlement Payment is secured by the Global

---

[2] As set forth in the Tew Declaration, the Debtor represents that the Initial Global Payment will be funded, in part, through $4 million in insurance proceeds from the Insurers (as defined in the Tew Declaration), on behalf of the Alfs and Individual Defendants, in connection with the settlement of the Committee Litigation and Global Litigation/Global Claim, subject to the receipt of appropriate releases.

Security Package; the MCA Payment is secured by the GUC Security Package; and the Residual Professional Payment is secured by the Professional Security Package.

The exact amount provided by any of the Disbursing Entities to the New Value Contribution is not predetermined. Rather, those amounts will be based on available liquidity from operations at the time each payment under the Plan becomes due. In that regard, each payment under the New Value Contribution may come from one or more of the Disbursing Entities, as well as the Debtor.

For the avoidance of doubt, nothing in this Section 7.1.2, nor in any other provision of this Plan, shall be construed or deemed to be an acceptance or agreement by any of the Non-Debtor Affiliates or the Alfs to be directly or indirectly responsible for payment of or to be directly or indirectly obligated to pay any Claim against the Debtor; and the sole obligation of the Non-Debtor Affiliates and the Alfs is to perform their specific obligations under the terms and conditions of this Plan.

### 7.1.3    New Value Corollary

As set forth in more detail in Section 7.1.2 above, the Alfs and Non-Debtor Affiliates will collectively contribute more than $12,000,000 in New Value Contributions to fund distributions under the Plan, which pays creditors in full or almost in full. This substantial contribution justifies National Holdings' retention of its Shareholder Interest, as evidenced by the support for the Plan by the Committee and Global and the lack of any competing plan despite the fact that the Debtor's exclusive period to file a plan has long since lapsed.

### 7.1.4    The Security Packages

### 7.1.4.1    The GUC Security Package

The security set forth in this Section 7.1.4.1 shall be collectively referred to as the "GUC Security Package." The MCA Payment will be secured by the GUC Guaranty Agreement. The Securing Parties shall cause any new U.S.-based or domiciled affiliate of any of the Securing Parties to sign a joinder to the GUC Guaranty Agreement. In addition, the Securing Parties shall execute the GUC Stipulated Judgment, admitting to liability with respect to the MCA Payment, which shall be held in escrow by the GUC Administrator until the earlier of: (i) the 31st day a default remains uncured; or (ii) the payment in full of the MCA Payment, in which case within three (3) business days the GUC Stipulated Judgment shall be returned to counsel for the Debtor. For avoidance of doubt, the Securing Parties' guarantee of the MCA Payment will not limit in any way the Securing Parties' ability to finance their operations.

### 7.1.4.2    The Global Security Package

The security set forth in this Section 7.1.4.2 shall be collectively referred to as the "Global Security Package." The Residual Settlement Payment will be secured by the Global Guaranty Agreement. The Securing Parties shall cause any new U.S.-based or domiciled affiliate of any of the Securing Parties to sign a joinder to the Global Guaranty Agreement. In addition, the Securing Parties shall execute the Global Stipulated Judgment, admitting to liability with respect to the

Residual Settlement Payment, which shall be held in escrow by Global until the earlier of: (i) the 31st day a default remains uncured; or (ii) the payment in full of the Residual Settlement Payment, in which case within three (3) business days the Global Stipulated Judgment shall be returned to counsel for the Debtor. For avoidance of doubt, the Securing Parties' guarantee of the Residual Settlement Payment will not limit in any way the Securing Parties' ability to finance their operations.

### 7.1.4.3    The Professional Security Package

The security set forth in this Section 7.1.4.3 shall be collectively referred to as the "Professional Security Package." The Residual Professional Payment for each Professional will be secured by a Professional Guaranty Agreement for the benefit of each Professional. The Securing Parties shall cause any new U.S. based affiliate of any of the Securing Parties to sign a joinder to the each Professional Guaranty Agreement. In addition, the Securing Parties shall execute a Professional Stipulated Judgment for the benefit of each Professional, admitting to liability with respect to the Residual Professional Payment, which shall be held in escrow by each Professional until the earlier of: (i) the 31st day a default remains uncured; or (ii) the payment in full of the Residual Professional Payment, in which case within three (3) business days the applicable Professional Stipulated Judgment shall be returned to counsel for the Debtor. For avoidance of doubt, the Securing Parties' guarantee of the Residual Professional Payment will not limit in any way the Securing Parties' ability to finance their operations.

### 7.2    The GUC Administrator

The GUC Administrator shall be a Person selected by the Committee no later than ten (10) days prior to the Confirmation Hearing. In the event that the GUC Administrator resigns, is terminated or is otherwise unable to serve as the GUC Administrator, then the Chairperson of the Committee or the Bankruptcy Court may designate a Person to serve as the successor GUC Administrator. Notice of the appointment of a successor GUC Administrator shall be filed by the successor GUC Administrator with the Bankruptcy Court.

The GUC Administrator may resign by giving prior written notice to the Bankruptcy Court, the Debtor and each Holder of a Class 3 Other Unsecured Claim that did not elect to receive Convenience Class Treatment (the "Notice"); provided, however, that such resignation shall not be effective until the earlier of: (i) thirty (30) days after the date of the filing of such Notice; or (ii) the appointment of a successor GUC Administrator pursuant to this Section 7.2. The GUC Administrator may be removed for "cause" upon order of the Bankruptcy Court after notice and opportunity for a hearing by a party in interest.

The GUC Administrator shall (i) hold in escrow the GUC Stipulated Judgment as set forth in Section 7.1.4.1 of the Plan; and (ii) have standing and be empowered and authorized to enforce the terms of the GUC Security Package. To the extent the GUC Administrator is required to take any enforcement action due to an Event of Default under Section 7.6 of this Plan, it shall be entitled to reimbursement of their legal fees and expenses by the Securing Parties.

Case 1-14-12414-MJK    Doc 832    Filed 09/20/17    Entered 09/20/17 18:23:23,
Description: Main Document  , Page 25 of 45

### 7.3    Reorganized Company

The Reorganized Company, which shall continue to carry on the business of the Debtor, will consist of the reorganized Debtor. For operating the Reorganized Company, the Plan shall not alter the composition, members or terms of members of the board of directors of the Debtor.

Except as otherwise provided in the Plan, the existing officers and directors of the Debtor shall serve in their current capacities in the Reorganized Company. The officers of the Debtor include: Mr. Alf, President and Chief Executive Officer and Michael Tew, Treasurer. The sole director of the Debtor is Mr. Alf. Mr. Alf is the sole shareholder of National Holdings, which is the sole shareholder of the Debtor. Mr. Alf's compensation will remain unchanged. From and after the Effective Date, each director or officer of the Reorganized Company shall serve pursuant to the terms of the respective charters and bylaws or other constituent documents, and applicable state corporation law.

### 7.4    Actions Necessary and Appropriate

On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Company may operate its business and use, acquire, or dispose of property free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Company and the officers and members of the board of directors thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

### 7.5    Incentive Plans & Employee/Retiree Benefits

Except as otherwise provided herein, on and after the Effective Date, subject to any Final Order, the Reorganized Company shall: (i) amend, adopt, assume and/or honor in the ordinary course of business, any contracts, agreements, policies, programs, and plans, in accordance with their respective terms, for, among other things, compensation, including any incentive plan, health care benefits, disability benefits, deferred compensation benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance, and accidental death and dismemberment insurance for the directors, officers, and employees of the Debtor who served in such capacity from and after the Petition Date; and (ii) honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time arising prior to the Petition Date and not otherwise paid pursuant to a Bankruptcy Court order. Notwithstanding the foregoing, pursuant to Section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as that term is defined in Section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable non-bankruptcy law.

### 7.6    Event of Default

Upon the occurrence of an Event of Default, the unpaid portion of the New Value Contribution (the "Remaining Debt") shall immediately become due in full and shall accrue

interest at a rate of twelve percent (12%) annum (the "Default Rate"); provided, however, that if the Event of Default is Cured within thirty (30) days, the Remaining Debt shall be reinstated at the non-Default Rate of six percent (6%) annum (the "Interest Rate"). Further, if the Event of Default is not cured within thirty (30) days: (i) the GUC Administrator, Global and the Professionals (the "Plan Secured Parties") shall be allowed to execute on their respective security documents; and (ii) the Plan Secured Parties shall be entitled to the entry of a worldwide freezing order that restrains the Debtor and Non-Debtor Affiliates from disposing of their assets in all jurisdictions around the world. The Debtor, the AIfs and the Non-Debtor Affiliates shall be barred from and waive any right to contest entry of such worldwide freezing order. Prior to any Plan Secured Party executing on its respective security documents in accordance with this Section 7.6, it must provide notice to the other Plan Secured Parties in accordance with Section 15.15. To the extent the Plan Secured Parties are required to take any enforcement action due to an Event of Default, they each shall be entitled to reimbursement of their legal fees and expenses by the Securing Parties. Nothing herein shall be construed to limit the rights and remedies of any Plan Secured Party, including without limitation seeking entry of the GUC Stipulated Judgment, the Global Stipulated Judgment or any Professional Stipulated Judgment.

For the avoidance of doubt, the interest due and owing on any payment required to Cure a monetary Event of Default shall be calculated at the Interest Rate and not the Default Rate.

### 7.7    Intercompany Claims

Holders of Intercompany Claims shall not receive any specific distribution under this Plan on account of such Claims. Intercompany Claims will, however, remain in place and will not be discharged in the Chapter 11 Case pursuant to this Plan, the Confirmation Order, the Bankruptcy Code or otherwise. The Non-Debtor Affiliates and the Debtor shall be free to continue intercompany relationships and Intercompany Transactions; provided, however, that no Intercompany Transaction shall impair the Disbursing Entities' ability to make any payments contemplated under this Plan.

## SECTION 8  DISTRIBUTIONS

### 8.1    Transfer of Claims

The various transfer registers for each of the Classes of Claims as maintained by the Debtor, or its respective agents, shall be deemed closed as of the close of business on the Confirmation Date. Thereafter, any change of the Holder of a Claim shall be effective on a date selected by the Debtor or the Reorganized Company that is no later than thirty (30) days after the transferee is substituted for the transferor of such Claim pursuant to Bankruptcy Rule 3001.

### 8.2    Convenience Claims

Each Holder of an Allowed Other Unsecured Claim that is less than or equal to $30,000 in value may elect, in its sole discretion, to receive sixty percent (60%) of its Allowed Claim in Cash on the Effective Date in full satisfaction of such Claim. The Holder must make its payment election when voting on the Plan by checking the appropriate box on its Ballot.

Each Holder of an Allowed Other Unsecured Claim that is greater than $30,000 in value may elect, in its sole discretion, to voluntarily reduce such Claim to $30,000 and receive sixty (60%) of that amount in Cash on the Effective Date in full satisfaction of such Claim. The Holder must make its reduction and payment election when voting on the Plan by checking the appropriate box on its Ballot.

The default treatment for Allowed Other Unsecured Claims is Cash equal to the Maximum Claim Allowance (*i.e.* 94% of the full amount of such Allowed Claim) in installment payments as set forth in the GUC Payment Schedule, as more particularly described in Section 5.1.3 of this Plan (the "Default Treatment"). For a Holder of an Allowed Other Unsecured Claim to receive Convenience Class Treatment for its Claim, it must affirmatively elect that treatment by checking the appropriate box on its Ballot. Holders of Other Unsecured Claims that: (i) fail to return a Ballot by the Voting Deadline; or (ii) return a Ballot by the Voting Deadline but does not opt-in to Convenience Class Treatment will be deemed to have elected the Default Treatment.

Holders of Other Unsecured Claims that elect to receive Convenience Class Treatment for their Allowed Claims will receive a Cash distribution in an amount equal to sixty percent (60%) of such Claims (initially reduced to $30,000 as necessary) on the Effective Date from the Disbursing Entities, in full satisfaction of such Claims.

### 8.3     Distributions

All distributions under this Plan shall be made by the Disbursing Entities on or after the Effective Date, or as otherwise provided herein. No bond or surety for the performance of the duties of the Disbursing Entities under this Plan shall be required unless ordered by the Bankruptcy Court. In the event that the Disbursing Entities are so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Disbursing Entities.

### 8.4     Timing

Distributions to be made on account of Claims that are Allowed Claims shall be made by the Disbursing Entities as provided in the Plan, or as ordered by the Bankruptcy Court. Any distribution to be made on the Effective Date pursuant to the Plan shall be deemed as having been made on the Effective Date, if such distribution is made on the Effective Date or within three (3) Business Days thereof. Any payment or distribution required under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

### 8.5     Interest on Claims

Unless otherwise expressly provided for in the Plan, the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on Claims, and no Claim Holder shall be entitled to interest accruing on or after the Petition Date on any Claim. Notwithstanding the preceding sentence, post-petition interest shall accrue on the Residual Settlement Payment and the MCA Payment at the Interest Rate. To the extent required by applicable bankruptcy law, and not otherwise provided for in the Plan or the Confirmation Order, post-petition interest shall accrue on Claims at the applicable non-default rate.

### 8.6 Consent to Different Treatment

To the extent the Holder of any Claim or any party to an Executory Contract agrees in writing to a treatment less favorable than that otherwise provided under the Plan, those agreed-upon provisions, rather than the Plan, shall specify the treatment of such Claim or Executory Contract.

### 8.7 Setoffs

Disbursing Entities may, but shall not be required to, setoff against any claims of any nature whatsoever that the Debtor may have against the Holder of such Claim for purposes of determining the Allowed amount of such Claim on which a distribution shall be made. Neither the failure to perform such setoff nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim that the Debtor may have against the Holder of such Claim.

### 8.8 Manner of Payment

At the option of the Disbursing Entities, any Cash payment to be made under the Plan may be made by a check, wire transfer, or as otherwise required or provided in any applicable agreement between the Disbursing Entity and the Holder of an Allowed Claim receiving the disbursement.

### 8.9 Delivery

All distributions to any Holder of an Allowed Claim not made by wire transfer shall be made by regular mail, postage prepaid, to the address of such Holder as set forth on the Schedules or on the Debtor's books and records, unless: (i) the Debtor has been notified in writing of a change of address, including by the filing of a Proof of Claim by such Holder; or (ii) the Plan or any agreement executed in connection with the Plan provides otherwise. In all cases of delivery by mail, the date of delivery or distribution shall be the date of mailing.

### 8.10 Minimum Distributions

No payment of Cash in an amount of less than $150.00 shall be required to be made on account of any Allowed Claim. Such undistributed amount may instead be used in accordance with the Plan.

### 8.11 Allocation of Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a distribution under this Plan includes both principal and accrued but unpaid interest, such distribution shall be allocated to the principal amount (as determined for federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

### 8.12 Distributions Free and Clear

Except as otherwise provided in this Plan, any distribution or transfer made under this Plan, including, without limitation, distributions to any Holder of an Allowed Claim, shall be free and clear of any Liens, Claims, encumbrances, charges and other interests, and no other entity shall

have any interest, whether legal, beneficial or otherwise, in property distributed or transferred pursuant to this Plan.

### 8.13 Unclaimed Distributions

In the event that any distribution to any Holder of an Allowed Claim is returned as undeliverable, the Disbursing Entity will use reasonable efforts to determine the current address of such Holder. However, the Disbursing Entity will not make a distribution to such Holder unless or until it determines the then current address of such Holder. Any distributions not claimed after six (6) months will revert to the Disbursing Entity to be paid to other members of the same Class as the Holder whose distribution is unclaimed in accordance with the provisions of this Plan, subject to the Maximum Claim Allowance, as applicable. Any Claim of any other Holder to property deemed unclaimed shall be discharged and forever barred.

Any check not presented for payment within ninety (90) days after its issuance shall be void. The payee of such check shall have the sole responsibility to request a replacement check from the Disbursing Entity, but in no event may the payee make such a request more than six (6) months after the original distribution date of such Claim.

## SECTION 9  PROCEDURES FOR DISPUTED CLAIMS

### 9.1 Allowance of Claims and Interests

Except as expressly provided herein, or in any order entered in the Chapter 11 Case prior to the Effective Date, including the Confirmation Order, no Claim or Interest shall be deemed Allowed unless and until such Claim or Interest is deemed Allowed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order.

### 9.2 Objection Deadline and Prosecution

The Debtor shall be responsible for administering, disputing, objecting to, compromising, or otherwise resolving the Claims. Any objections to the Claims shall be filed by the Debtor no later than the Claims Objection Deadline and served upon the Holders of each of the Claims to which it has made objections. Nothing contained in the Plan, however, shall limit the Debtor's right to object to Claims, if any, filed or amended after the Claims Objection Deadline. Moreover, notwithstanding the expiration of the Claims Objection Deadline, and unless subsequently ordered for good cause shown to shorten time, the Debtor shall continue to have the right to amend any objections and to file and prosecute supplemental objections and counterclaims to Disputed Claims until such Disputed Claims are Allowed or not. Subject to the limitations set forth in the Plan, the Debtor shall be authorized to, and shall, resolve all Disputed Claims by withdrawing or settling such objections thereto, or by litigating to judgment in the Bankruptcy Court or such other court having jurisdiction on the validity, nature, and/or amount thereof.

### 9.3 Estimation of Claims

Before the Effective Date, the Debtor, and on or after the Effective Date, the Reorganized Company, may (but are not required to) at any time request that the Bankruptcy Court estimate any

Case 1-14-12414-MJK, Doc 832, Filed 09/20/17, Entered 09/20/17 18:23:23, Description: Main Document , Page 30 of 45

Contingent Claim or Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code for any reason, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to such objection. In the event that the Bankruptcy Court estimates any Contingent Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Reorganized Company may pursue supplementary proceedings to object to the allowance of such Claim. Before the Effective Date, the Debtor, and on or after the Effective Date, the Reorganized Company, are further authorized to file a Proof of Claim or Interest as provided under Section 501(c) of the Bankruptcy Code.

### 9.4    No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim and the remainder has been disallowed.

### 9.5    Distributions After Allowance

Payments and distributions shall be made as appropriate to the Holder of any Disputed Claim that has become an Allowed Claim by the Disbursing Entities as set forth in this Plan. Such distributions shall be based upon the cumulative distributions that would have been made to the Holder of such Claim under the Plan if the Disputed Claim had been Allowed on the Effective Date (excluding any present value calculations) and shall not be limited by the Disputed Claim amounts previously reserved with respect to such Disputed Claim to the extent that additional amounts are available therefor, but only to the extent that such additional amounts have not yet been distributed to Holders of Allowed Claims.

## SECTION 10  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 10.1    Assumption of Executory Contracts

Except as otherwise provided herein, each Executory Contract shall be deemed assumed, without the need for any further notice to, or action, order, or approval of, the Bankruptcy Court, as of the Effective Date under Section 365 of the Bankruptcy Code, unless any such Executory Contract: (i) was already assumed or rejected pursuant to a Final Order of the Bankruptcy Court; (ii) specifically designated or generally described on any document exhibit to the Plan as a contract or lease subject to rejection; or (iii) subject of a separate motion filed under Section 365 of the Bankruptcy Code to assume or reject such contract by the Debtor prior to the Effective Date. The assumption of Executory Contracts hereunder may include the assignment of certain of such contracts to affiliates upon thirty (30) days' notice and an opportunity to object to the contract

counterparty. The Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described assumptions.

Except as otherwise provided herein or agreed to by the Debtor with the applicable counterparty, each assumed Executory Contract shall include all modifications, amendments, supplements, restatements or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated hereunder. Modifications, amendments, supplements and restatements to prepetition Executory Contracts that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the pre-petition nature of the Executory Contract or the validity, priority or amount of any Claims that may arise in connection therewith.

**10.2     Cure of Defaults & Objections to Assumption**

The proposed cure amount for each Executory Contract shall be the higher of the amount set forth in: (i) the Schedules; (ii) a Proof of Claim filed by such counterparty; or (iii) Schedule 1 annexed to the Plan. Cure obligations, if any, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure amount in Cash on the Effective Date, or as soon as reasonably practicable thereafter, by the Debtor or Reorganized Company or on such other terms as the parties to such Executory Contract may otherwise agree. Any objection to the assumption of an Executory Contract pursuant to the Plan, including with respect to the proposed Cure, must be filed with the Bankruptcy Court by the deadline established for filing objections to the Plan. The hearing on any such objection may be held at the Confirmation Hearing or as otherwise scheduled by the Bankruptcy Court. Any counterparty to an Executory Contract that receives notice and fails to timely object to the proposed assumption of any Executory Contract will be deemed to have consented to such assumption.

If there is a dispute regarding the ability of the Reorganized Company or any assignee to provide "adequate assurance of future performance" within the meaning of Section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, including a Cure dispute, then payment of the Cure shall occur as soon as practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtor or Reorganized Company, as applicable, and the counterparty to the Executory Contract. The Debtor or Reorganized Company, as applicable, reserve the right to either reject or nullify the assumption of any Executory Contract within forty-five (45) days after entry of a Final Order resolving an objection to assumption or determining the Cure or any request for adequate assurance of future performance required to assume such Executory Contract.

Assumption of any Executory Contract pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Cures, Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract at any time prior to the effective date of assumption. All Proofs of Claim based upon Executory Contracts that have been assumed in the Chapter 11 Case, including pursuant to the Confirmation Order, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to, or action, order or approval of, the Bankruptcy Court.

### 10.3 Insurance Policies

For the avoidance of any doubt, all rights of the Debtor under any Insurance Policies shall be preserved and shall vest with the Reorganized Company and shall remain in full force and effect after the Effective Date for the term thereof; and nothing herein shall alter or adversely affect the rights of any non-Debtor beneficiaries of or covered Persons or Entities under such Insurance Policies.

### 10.4 Survival of Indemnification Obligations

Any obligations of the Debtor pursuant to its corporate charters and by-laws or agreements entered into any time prior to the Effective Date to indemnify: (i) current directors, officers, agents, and/or employees; and (ii) certain current and former employees, with respect to all present and future actions, suits, and proceedings against the Debtor or such indemnified parties, based upon any act or omission for or on behalf of the Debtor, shall not be discharged or impaired by confirmation of the Plan.

## SECTION 11 CONDITIONS PRECEDENT TO EFFECTIVE DATE

### 11.1 Conditions Precedent

The Effective Date is the first Business Day on which all of the following conditions have been satisfied or waived at the discretion of the Debtor, the Committee and Global:

> (i)　the Confirmation Order shall have become a Final Order in form and substance reasonably satisfactory to the Debtor, Global and the Committee;
>
> (ii)　all actions, documents, and agreements necessary to implement this Plan, including, without limitation, all actions, documents, and agreements necessary to implement the Security Packages, shall have been effected or executed; and
>
> (iii)　after (i) and (ii), the Initial Payments shall have been funded and paid pursuant to the terms of this Plan.

### 11.2 Notice

Upon satisfaction of all of the following conditions, the Debtor shall send notice of the Effective Date to all known creditors and parties in interest.

### 11.3 Effect of Failure of Conditions

If the conditions precedent specified in Section 11.1 hereof have not been satisfied or waived within thirty (30) days after the Confirmation Order becomes a Final Order, which period may be extended by Order of the Court, then: (i) the Confirmation Order shall be vacated; (ii) no distributions under this Plan shall be made; (iii) the Debtor and all Holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred; and (iv) all of the Debtor's obligations with respect to Claims and Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any claims or interests by or against the Debtor or any

other Person or Entity or to prejudice in any manner the rights of the Debtor or any other Person or Entity in any further proceedings involving the Debtor or otherwise.

## SECTION 12  EFFECT OF CONFIRMATION

### 12.1    Effective Date

On the Effective Date or thereafter as specified herein, among other things, the Holders of Claims that are Allowed Claims as of such Effective Date shall receive the treatment specified in this Plan.

### 12.2    Vesting of Assets

Except as otherwise set forth in this Plan, upon the Effective Date, pursuant to Sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtor's Estate shall vest in the Reorganized Company free and clear of all Claims, liens, encumbrances, charges, and other interests, except as provided in this Plan or the Confirmation Order.  The Reorganized Company may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code and in all respects as if there were no pending cases under the Bankruptcy Code, except as provided in this Plan.

### 12.3    Binding Effect

On the Effective Date, and effective as of the Effective Date, this Plan shall be binding upon the Debtor, the Committee, and all present and former Holders of Claims against and Interests in any Debtor, and their respective Related Persons, regardless of whether any such Holder of a Claim or Interest has voted or failed to vote to accept or reject this Plan and regardless of whether any such Holder of a Claim or Interest is entitled to receive any distribution under the Plan.

### 12.4    Discharge

To the fullest extent provided under Section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan, the distributions, rights, and treatment that are provided in this Plan shall be in full and final satisfaction, settlement, release, and discharge, as of the Effective Date, of all Claims, Interests, and causes of action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against liabilities of, Liens on, obligations of, rights against, and Interests in, the Estate, the Debtor, or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests, including demands, liabilities, and causes of action that arose before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (i) a Proof of Claim or Interest based upon such Claim, debt, right, or Interest is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to Section 502 of the Bankruptcy Code; or (iii) the Holder of such a Claim or Interest has accepted this Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in this Plan.

### 12.5  Compromise and Settlement of Claims, Interests, and Controversies

Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any Distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable.

### 12.6  Injunction

**Except as otherwise expressly provided in this Plan, the Confirmation Order or a separate order of the Bankruptcy Court, all Persons and Entities who have held, hold or may hold Claims against or Interests in the Debtor, are permanently enjoined, on and after the Effective Date, from: (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest; (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor on account of any such Claim or Interest; (iii) creating, perfecting or enforcing any encumbrance of any kind against the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Interest; (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Interest; and (v) commencing or continuing in any manner any action or other proceeding of any kind with respect to any Claims and causes of action which are retained pursuant to this Plan, if any. Such injunction shall extend to successors of the Debtor, including, without limitation, the Reorganized Company.**

**Holders of Claims or Interests shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover any claims and/or Causes of Action released and discharged pursuant to this Plan, including those set forth in Section 12.10 of this Plan; provided, however, that the injunction provided for in this Section shall not: (i) bar actions based upon liability for acts or omissions that are the result of fraud, gross negligence, willful misconduct or willful violation of the securities laws or the Internal Revenue Code; (ii) preclude police, federal tax, or regulatory authorities from fulfilling their statutory duties; or (iii) bar the Claims, if any, of the United States of America.**

**Nothing in the Plan, including without limitation this Section 12.6, shall be construed to limit the rights of any Plan Secured Party from enforcing any rights or remedies granted to such Plan Secured Party pursuant to the terms of this Plan.**

### 12.7 Terms of Injunction or Stays

Except as otherwise provided in this Plan, to the extent permitted by applicable law and subject to the Bankruptcy Court's post-confirmation jurisdiction to modify the injunctions and stays under this Plan: (i) all injunctions with respect to or stays against an action against property of the Debtor's Estate arising under or entered during the Chapter 11 Case under Sections 105 or 362 of the Bankruptcy Code, and in existence on the Confirmation Date, shall remain in full force and effect until such property is no longer property of the Debtor's Estate; and (ii) all other injunctions and stays arising under or entered during the Chapter 11 Case under Sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earlier of (a) the date that the Chapter 11 Case is closed pursuant to a Final Order of the Bankruptcy Court or (b) the date that the Chapter 11 Case is dismissed pursuant to a Final Order of the Bankruptcy Court.

### 12.8 Injunction Against Interference with Plan

Upon the Bankruptcy Court's entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan by the Debtor and its respective affiliates, employees, advisors, officers and directors, agents, and other Related Persons.

### 12.9 Section 525 Injunction

Subject to the exceptions set forth in Section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend or refuse to renew any license, permit, charter, franchise or other similar grant to, or condition such a grant to, or discriminate with respect to such a grant against, the Reorganized Company or any other Person with whom they have been associated or refuse to permit the Reorganized Company to participate in any governmental program, solely because the Reorganized Company commenced the Chapter 11 Case or was insolvent before the commencement of the Chapter 11 Case, or during the Chapter 11 Case but before the Reorganized Company is granted or denied a discharge, or has not paid a debt that is dischargeable in the Chapter 11 Case.

### 12.10 Releases

In accordance with the requirements of Bankruptcy Rule 3016(c), the provisions of this Section 12.10 operate, in part, to specifically release certain individuals and entities from all claims arising out of this Chapter 11 Case and enjoin certain acts in connection with such releases. Such releases cover not only the Debtor but also certain third parties whose interests are congruent with those of the Debtor in this Chapter 11 Case and whose contributions are so critical to the reorganization effort that without them the reorganization effort would fail. The Plan Proponents believe that without the protection of such releases the Plan would have less likelihood of success.

The releases are justified as an integral part of the Debtor's overall restructuring and liquidation efforts. Specifically, the Released Parties will all make substantial contributions to the Debtor's estate (i.e. the New Value Contribution), without which the Debtor may not have been able to propose a confirmable Plan. Entry of the Confirmation Order will constitute the Bankruptcy

Court's approval, pursuant to Bankruptcy Rule 9019, of the releases and constitute its finding that the releases are: (i) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of the claims released by the releases; (ii) in the best interests of the Debtor and all Holders of Claims; (iii) fair, equitable and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) a bar to any of the Holders of Claims and Interests asserting any claim released by the releases against any of the Released Parties.

### 12.10.1   Releases of Plan Proponents and Professionals

**EACH HOLDER OF A CLAIM AGAINST OR INTEREST IN THE DEBTOR (WHETHER OR NOT ALLOWED), AND EACH PERSON OR ENTITY PARTICIPATING IN EXCHANGES AND DISTRIBUTIONS UNDER OR PURSUANT TO THIS PLAN, FOR ITSELF AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, CURRENT AND FORMER OFFICERS, DIRECTORS, AGENTS AND EMPLOYEES, IN EACH CASE IN THEIR CAPACITY AS SUCH, SHALL BE DEEMED TO HAVE RELEASED ANY AND ALL CLAIMS AND CAUSES OF ACTION AGAINST (I) THE DEBTOR; (II) THE COMMITTEE AND MEMBERS OF THE COMMITTEE IN THEIR CAPACITY AS MEMBERS OF THE COMMITTEE; (III) GLOBAL; AND (IV) THE PROFESSIONALS AND EACH RELEASED PARTIES' RELATED PERSONS, PREDECESSORS IN INTEREST, SUCCESSORS, ASSIGNS, AND EACH OF THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES AND AGENTS, INCLUDING THOSE ARISING PRIOR TO THE EFFECTIVE DATE FROM ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THIS CHAPTER 11 CASE AND RELATED PROCEEDINGS, INCLUDING, BUT NOT LIMITED TO, FILING OF THIS CHAPTER 11 CASE, ADMINISTRATION OF THIS CHAPTER 11 CASE, FORMULATION, NEGOTIATION, PREPARATION, DISSEMINATION, APPROVAL, EXECUTION, ADMINISTRATION, CONFIRMATION, IMPLEMENTATION, OR CONSUMMATION OF, AS WELL AS THE SOLICITATION OF VOTES FOR, THE PLAN (INCLUDING ALL DISTRIBUTIONS THEREUNDER), THE DISCLOSURE STATEMENT AND THE PLAN SUPPLEMENT; <u>PROVIDED</u>, <u>HOWEVER</u>, (1) THE PRECEDING RELEASE IN THIS SECTION 12.10.1 SHALL NOT APPLY TO ANY PERSONAL, DIRECT, NON-DERIVATIVE CLAIM OR CAUSE OF ACTION HELD BY A HOLDER (INCLUDING FOR THESE PURPOSES ANY OF ITS RESPECTIVE SUCCESSORS, ASSIGNS, TRANSFEREES, CURRENT AND FORMER OFFICERS, DIRECTORS, AGENTS AND EMPLOYEES) OF A CLAIM AGAINST OR INTEREST IN THE DEBTOR, WHETHER OR NOT SUCH CLAIM OR INTEREST IS DETERMINED TO BE AN ALLOWED CLAIM OR ALLOWED INTEREST, AND (2) NOTHING IN THIS SECTION SHALL BE CONSTRUED TO RELEASE OR EXCULPATE ANY PERSON OR ENTITY FROM GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR FRAUD.**

### 12.10.2 Releases of Directors, Officers, Non-Debtor Affiliates, and Additional Persons.

**IN ADDITION, AS OF THE EFFECTIVE DATE, ALL DEFENDANTS IN THE COMMITTEE LITIGATION, INCLUDING (I) THE NON-DEBTOR AFFILIATES,[3] (II) MR. ALF AND MRS. ALF, IN THEIR CAPACITIES AS CURRENT OR FORMER OFFICERS AND DIRECTORS OF THE DEBTOR AND IN THEIR INDIVIDUAL CAPACITIES, AS APPLICABLE, AND (III) ALL INDIVIDUAL DEFENDANTS CLAIMED TO BE CURRENT OR FORMER OFFICERS OF THE DEBTOR,[4] AND THEIR RESPECTIVE PREDECESSORS IN INTEREST, SUCCESSORS, ASSIGNS, AND EACH OF THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES AND AGENTS, SHALL BE DEEMED TO HAVE BEEN RELEASED AND DISCHARGED FROM ANY AND ALL OBLIGATIONS, LIABILITIES, CAUSES OF ACTION, DAMAGES, CLAIMS, EXTENSIONS OF JUDGEMENTS, AND DEMANDS AND MOTIONS OF ANY KIND WHATSOEVER, AT LAW OR IN EQUITY, DIRECT OR INDIRECT, KNOWN OR UNKNOWN, DISCOVERED OR UNDISCOVERED, ANY ELEMENT OF WHICH AROSE OR ACCRUED ON OR BEFORE THE EFFECTIVE DATE; PROVIDED, HOWEVER, THAT NOTHING IN THIS SECTION SHALL BE DEEMED TO (I) RELEASE ANY SUCH PERSON FROM LIABILITY FOR ACTS OR OMISSIONS THAT ARE THE RESULT OF FRAUD, GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR WILLFUL VIOLATION OF THE SECURITIES LAWS OR THE INTERNAL REVENUE CODE OR THE CLAIMS, IF ANY, OF THE UNITED STATES; (II) PREVENT THE REORGANIZED COMPANY FROM OBJECTING TO THE CLAIM OF ANY SUCH PERSON; OR (III) PRECLUDE POLICE, FEDERAL TAX, OR REGULATORY AGENCIES FROM FULFILLING THEIR STATUTORY DUTIES.**

**NOTHING IN THE PLAN, INCLUDING WITHOUT LIMITATION THIS SECTION 12.10.2, SHALL BE CONSTRUED TO RELEASE ANY PARTY, INCLUDING, WITHOUT LIMITATION, THE SECURING PARTIES AND/OR THE DISBURSING ENTITES FROM ANY OBLIGATIONS UNDER THE TERMS OF THE PLAN.**

### 12.11 Exculpation

None of: (i) the Debtor; (ii) the Committee and members of the Committee in their capacity as members of the Committee; (iii) the GUC Administrator; (iv) Global; or (v) the Professionals or any of the Released Parties' Related Persons shall have or incur any liability

---

[3] As defined in the Plan, the Non-Debtor Affiliates consists of the following: (i) Windward Drive Lot 12, LLC; (ii) National Air Cargo Holdings, Inc.; (iii) National Air Cargo GmbH; (iv) National Air Cargo S.a.r.l.; (v) NACM OHQ SDN BHD; (vi) NACM Holdings SDN BHD; (vii) National Air Cargo KK; (viii) National Air Cargo LLC; (ix) National Air Cargo Limited; (x) National Air Cargo Nederland BV; (xi) National Air Cargo Middle East FZE (DWC Branch) LLC; (xii) NAC Acquisitions, LLC; (xiii) NAC AC Ventures LLC; (xiv) NAC 300 LLC; (xv) NAC 500; (xvi) National Air Cargo Group (d/b/a National Airlines); (xvii) Braxton Acquisitions LLC; (xviii) LA 45 Equipment LLC; (xix) National Brokerage LLC; (xx) Tracking Innovations, Inc.; and (xxi) NACG Leasing, LLC.

[4] As defined in the Plan, the Individual Defendants consists of the following: (i) Glen Joerger; (ii) Jacob Matthew; (iii) Robert D. Bishop, Jr.; (iv) John Baker; (v) Brian Conaway; (vi) Shirley Kaufman; (vii) Preston Murray; and (viii) William Mortensen.

to any Holder of any Claim or Interest for any act or omission in connection with, relating to, or arising out of the Chapter 11 Case and related proceedings, including, but not limited to, filing of the Chapter 11 Case, administration of the Chapter 11 Case, the formulation, negotiation, preparation, dissemination, approval, execution, administration, confirmation, implementation, or consummation of, as well as the solicitation of votes for, the Plan (including all distributions thereunder), the Disclosure Statement, or the Plan Supplement; except for bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing, or, in the case of an attorney professional and as required under Rule 1.8(h)(1) of the New York State Rules of Professional Conduct, malpractice; and, in all respects, the Debtor, the Committee and its members, and each of their respective members, officers, directors, employees, advisors, professionals, attorneys, agents, and other Related Persons shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.**

### 12.12   Release of Liens

Except as otherwise provided herein, or in any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged.

### 12.13   Dismissal of Adversary Proceedings/Waiver of Avoidance Actions

All Adversary Proceedings brought by the Committee, including the Committee Litigation, shall be stayed until the Effective Date and then deemed dismissed with prejudice on the Effective Date without further action by the Committee or any other party. All Avoidance Actions held by the Debtor against any third party or person arising on or prior to the Effective Date shall be waived and released as of the Effective Date.

### 12.14   Dissolution of Committee

On the first (1st) Business Day following the Effective Date, and provided that the GUC Administrator has been appointed, the Committee shall be dissolved and the Committee, its members, and professionals retained by the Committee in accordance with Section 1103 of the Bankruptcy Code will be released and discharged from their respective fiduciary obligations, duties, and responsibilities arising from or related to the Chapter 11 Case, except with respect to: (i) prosecuting applications for professionals' compensation or reimbursement of expenses incurred as a member of the Committee; (ii) asserting, disputing and participating in the resolution of Professional fee applications; and (iii) prosecuting or participating in any appeal of the Confirmation Order or any request for reconsideration thereof. Upon the conclusion of (i) through (iii), the Committee shall be immediately dissolved, released, and discharged. The Professionals retained by the Committee and the members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered or expenses incurred on behalf of the Committee after the first (1st) Business Day following the Effective Date, except for services rendered and expenses incurred, as approved by the Court, in connection with: (i) prosecuting applications for professionals' compensation; (ii) asserting, disputing and participating in the resolution of Professional Claims or reimbursement of expenses incurred as a member of the

Case 1-14-12414-MJK,   Doc 832,   Filed 09/20/17,   Entered 09/20/17 18:23:23,
Description: Main Document , Page 39 of 45

Committee; and (iii) prosecuting or participating in any appeal of the Confirmation Order or any request for reconsideration thereof.

## SECTION 13  MODIFICATION, REVOCATION OR WITHDRAWAL OF PLAN

### 13.1    Modification

Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code, if applicable, the Debtor or the Reorganized Company, as applicable, reserve the right to alter, amend or modify the Plan before substantial Consummation; provided that: (i) any provision affecting the treatment of Other Unsecured Claims shall not be modified without the prior consent of the Committee; and (ii) any provision affecting the treatment of the Global Claim shall not be modified without the prior consent of Global, except with respect to (i) and (ii) as required by the Bankruptcy Court or United States Trustee.

### 13.2    Revocation or Withdrawal

The Plan Proponents reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Plan Proponents revoke or withdraw the Plan, or if confirmation as to the Debtor does not occur, then the Plan is null and void in all respects, and nothing contained in the Plan will: (i) constitute a waiver or release of any Claims by or against the Debtor; or (ii) prejudice in any manner the rights of the Debtor or any other party.

## SECTION 14  RETENTION OF JURISDICTION

## SECTION 15  PURSUANT TO SECTIONS 105(C) AND 1142 OF THE BANKRUPTCY CODE AND NOTWITHSTANDING THE ENTRY OF THE CONFIRMATION ORDER AND THE OCCURRENCE OF THE EFFECTIVE DATE, THE BANKRUPTCY COURT SHALL RETAIN JURISDICTION OVER ALL MATTERS ARISING UNDER THE BANKRUPTCY CODE OR ARISING IN, OR RELATED TO, THE CHAPTER 11 CASE, TO THE FULLEST EXTENT PERMITTED BY LAW. MISCELLANEOUS PROVISIONS

### 15.1    Governing Law

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to conflict-of-laws principles.

### 15.2    Additional Documents

On or before the Effective Date, the Plan Proponents may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor or Reorganized Company, as applicable, and all Holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or

Case 1-14-12414-MJK,    Doc 832,    Filed 09/20/17,    Entered 09/20/17 18:23:23,
Description: Main Document  , Page 40 of 45

documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### 15.3    Payment of Statutory Fees

On the Effective Date, and thereafter as may be required, the Reorganized Company shall pay all fees payable pursuant to Section 1930 of Title 28 of the United States Code. The Disbursing Entities will keep a record of, and provide a report to, the Reorganized Company of any distributions made by it under the Plan.

### 15.4    Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtor with respect to the Plan, the Disclosure Statement or supplemental filings shall be deemed an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

### 15.5    No Prejudice to Insurance Recovery

Nothing contained in this Plan shall be deemed to limit or adversely affect in any way any rights that any Holder of a Claim may have to seek and obtain recovery from any insurer of the Debtor or any insurance policy covering the Debtor with respect to any portion of such Claim not paid or scheduled to be paid by the Disbursing Entities under this Plan.

### 15.6    Elimination of Vacant Classes

Any Class of Claims that does not have a Holder of an Allowed Claim or a Claim temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of determining acceptance or rejection of the Plan by such Class pursuant to Section 1129(a)(8) of the Bankruptcy Code.

### 15.7    Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

### 15.8    Substantial Consummation

As soon as practicable after the Effective Date, the Reorganized Company shall file a report of substantial consummation with the Bankruptcy Court.

### 15.9    No Tax Advice

The Plan will have tax consequences to the Debtor and Holders of Claims. No opinion of counsel has been sought or obtained with respect to any tax consequences of the Plan and no tax

Case 1-14-12414-MJK,    Doc 832,    Filed 09/20/17    Entered 09/20/17 18:23:23,
Description: Main Document  , Page 41 of 45

opinion is given by the Disclosure Statement or Plan. No rulings or determinations of the IRS or any other tax authorities have been obtained or sought with respect to the Plan, and the description below is not binding upon the IRS or such other authorities.

No representations are made regarding the particular tax consequences of the Plan to any Holder of a Claim. The tax consequences of the Plan to Holders of Claims are in many cases uncertain and may vary depending on a Holder's individual circumstances. Each Holder of a Claim is strongly urged to consult its own tax advisor regarding the federal, state, local and foreign tax consequences of the transactions described in the Plan.

### 15.10   Entire Agreement

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### 15.11   Plan Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Debtor's counsel at the address herein, or by downloading such exhibits and documents from the Bankruptcy Court's website at www.nywb.uscourts.gov.

### 15.12   Severability

If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted; provided, however, that any such alteration or interpretation must be in form and substance acceptable to the Plan Proponents; and provided further that any such alteration or interpretation affecting the treatment of the Global Claim must be in a form and substance acceptable to Global and the Debtor. In the event of any such holding, alteration or interpretation that is acceptable to the Plan Proponents and, as applicable, Global, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 15.13   Section 1125(e) Good Faith Compliance

The Plan Proponents and each of their respective Related Persons shall be deemed to have acted in good faith under Section 1125(e) of the Bankruptcy Code.

### 15.14  Section 1146(a) Exemption

Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of property under the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee or governmental assessment.

### 15.15  Notices

#### 15.15.1  Notices to the Debtor or Reorganized Company

All notices, requests, and demands to or upon the Debtor or the Reorganized Company shall be in writing to be effective, and, unless otherwise expressly provided in this Plan, shall be deemed to have been duly given or made when actually delivered, or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

NATIONAL AIR CARGO, INC.
Attn:  Michael Tew
350 Windward Drive
Orchard Park, New York  14127
Telephone: (716) 580-6952
mtew@ctr.nationalairlines.com

*and*

LIPPES MATHIAS WEXLER
FRIEDMAN, LLP
Attn:  Raymond L. Fink
        John A. Mueller
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
Telephone: (716) 853-5100
Facsimile: (716) 853-5199
rfink@lippes.com
jmueller@lippes.com

#### 15.15.2  Notices to the GUC Administrator

All notices to or upon the GUC Administrator pursuant to this Plan shall be in writing to be effective, and, unless otherwise expressly provided in this Plan, shall be deemed to have been duly given or made when actually delivered, or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as set forth in the Plan Supplement.

#### 15.15.3  Notices to Global

All notices to or upon Global pursuant to this Plan shall be in writing to be effective, and, unless otherwise expressly provided in this Plan, shall be deemed to have been duly given or made when actually delivered, or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Case 1-14-12414-MJK,    Doc 832,    Filed 09/20/17,    Entered 09/20/17 18:23:23,
Description: Main Document  , Page 43 of 45

GLOBAL BTG LLC
Attn:  Jacob Hodges
Manager
5406 W. 11000 N. Suite 103
Box 421
Highland, UT 84003
Jacob@globalbtg.com

*and*

PERKINS COIE LLP
Attn: Schuyler G. Carroll
    Jeffrey D. Vanacore
30 Rockefeller Center, 22nd Floor
New York, NY 10112-0085
Telephone: (212) 262-6900
Facsimile: (212) 977-1649
JVanacore@perkinscoie.com
SCarroll@perkinscoie.com

PERKINS COIE LLP
Attn: Donald J. Kula
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Telephone: (310) 788-9900
Facsimile (310) 788-3399
DKula@perkinscoie.com

### 15.15.3    Notices to the Professionals

All notices to or upon the Professionals pursuant this Plan shall be in writing to be effective, and, unless otherwise expressly provided in this Plan, shall be deemed to have been duly given or made when actually delivered, or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as set forth in Schedule 2 to this Plan.

### 15.16    Standing

The GUC Administrator, Global and the Professionals shall have standing before the Bankruptcy Court to enforce the terms of the Plan, including without limitation, the GUC Security Package, the Global Security Package and the Professional Security Package, respectfully.

Dated:  September 19, 2017

NATIONAL AIR CARGO, INC.

By:      */s/ Michael Tew*
Name:    Michael Tew
Title:     Treasurer

_/s/ Raymond L. Fink_
Raymond L. Fink, Esq.
John A. Mueller, Esq.
LIPPES MATHIAS WEXLER FRIEDMAN, LLP
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
Telephone: (716) 853-5100
Facsimile: (716) 853-5199
rfink@lippes.com
jmueller@lippes.com

· _Counsel to the Debtor and
Debtor-in-Possession_

_/s/ Bradford J. Sandler_
Robert J. Feinstein, Esq.
Bradford J. Sandler, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
rfeinstein@PSZJlaw.com
bsandler@PSZJlaw.com

· _Counsel to the Official Committee of
Unsecured Creditors_