UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

---

IN RE:

NATIONAL AIR CARGO, INC.,

    DEBTOR.

CHAPTER 11
CASE NO. 1-14-12414-MJK

---

**DEBTOR'S OMNIBUS REPLY AND RESPONSE TO OBJECTIONS
TO CONFIRMATION OF PLAN OF REORGANIZATION**

TO:    HONORABLE MICHAEL J. KAPLAN
         UNITED STATES BANKRUPTCY JUDGE

National Air Cargo, Inc. (the "Debtor"), by and through its substitute bankruptcy counsel Lippes Mathias Wexler Friedman LLP, for its omnibus response and reply("Omnibus Response) to the limited objections to the Debtor's Consensual Plan (the "Plan") filed by, Global BTG LLC ("Global BTG") [Doc. #842], the United States Trustee for Region 2 ("UST") [Doc. #843] certain individual defendants in Adversary Proceeding No. 16-01081-MJK (the "Individual Defendants") [Doc. #844], and Maersk Line, Limited ("Maersk") [Doc. #848] respectfully sets forth and states as follows:

                I.      **Preliminary Statement.**

1. On or about October 17, 2014, the Debtor filed its voluntary petition for relief pursuant to Title 11, Chapter 11 of the United States Code (the "Bankruptcy Code") in the above-captioned proceeding (the "Chapter 11 Proceeding").

2. The Debtor continues to operate its business and manage its affairs as a debtor-in-possession in accordance with Bankruptcy Code §§ 1107 and 1108 of the Bankruptcy Code.

3. An Official Committee of Unsecured Creditors was duly appointed on or about September 7, 2014 (the "Creditors' Committee").

4. The Debtor filed its initial disclosure statement in respect of its Plan on or about July 31, 2017 [Doc. #804]. The First Amended Disclosure Statement was filed on September 19, 2017 [Doc. #830]

5. On or about September 20, 2017, the Disclosure Statement was approved subject to certain amendments (the "Disclosure Statement Order") [Doc. #831]. The Amended Disclosure Statement as approved was filed on September 21, 2017 [Doc. # 833]. The Plan confirmation presently hearing is scheduled for November 6, 2017 at 10:00 a.m. (the "Confirmation Hearing"). Objections to the Plan were to be filed by October 30, 2017 at 4:30 p.m. ("Plan Objection Deadline").

6. The Plan objections filed by Global BTG, the UST and the Individual Defendants all were timely filed. Maersk filed its limited objection on November 1, 2017.[1] The Debtor will address each of the respective Plan objections hereunder.

## II. Global BTG Objection.

7. As the court docket reflects, Global BTG has been a very active creditor throughout the Chapter 11 Proceeding, particularly since it is the largest creditor based upon a substantial pre-petition judgment that it obtained as a result of a jury trial, which was thereafter affirmed by the Ninth Circuit Court of Appeals on May 13, 2016. (*Global BTG LLC, Appellee v. National Air Cargo, Inc.*, D.C. No. 2:11-cv-01657). The prepetition enforcement proceedings instituted by

---

[1] Debtor's counsel agreed for its part only to extend Maersk's objection deadline to November 1, 2017, but without binding any other party or most certainly the Court.

Global BTG were the immediate precipitating factors that prompt the commencement of the Chapter 11 Proceeding.

8. As a result of motions file by Global BTG (with the Creditors' Committee's joinder therein)[Doc. #710 and 725] and the UST [Doc. #731], respectively, seeking the appointment of a Chapter 11 Trustee and the conversion of the Debtor's Chapter 11 Proceeding to a Chapter 7 case, and the vigorous discovery pursued by Global BTG's counsel in furtherance of its motion, a Settlement Agreement, dated May 15, 2017, that was negotiated between the Debtor, Global BTG, the Creditors' Committee and Non-Debtor Affiliates and then executed by the Debtor, Global BTG and Non-Debtor Affiliates.[2].

9. The Settlement Agreement provided the framework for the consensual Plan presently pending before the Court.

10. Global BTG raises three objections. Its first objection is essentially a reservation of rights with respect to certain collateral documents and agreements that need to be finalized and executed as contemplated by the Plan. Particularly, these agreements consist of guarantees from certain Non-Debtor Affiliates and Mr. Alf, a GUC Administrator Agreement and Stipulated Judgments in support of the aforementioned guarantee. The Plan does not require these collateral documents to be finalized as of the Confirmation Hearing date.

11. All of these agreements have been drafted, circulated, commented upon and are near finalization as we approach the Confirmation Hearing. Global BTG's reservation of its rights in this respect are duly noted.

12. The second objection seeks to include a provision in a confirmation order that would address the remedies available to Global BTG as well as others similarly situated in the

---

[2] Capitalized terms used throughout have the same definitions and meanings as set forth in the Amended Disclosure Statement and Consensual Plan of Reorganization.

3
Case 1-14-12414-MJK, Doc 851, Filed 11/03/17, Entered 11/03/17 14:54:29, Description: Main Document , Page 3 of 10

event that the initial funding of the Plan is not achieved by the Effective Date. The subtext of this particular objection is Global BTG's concern regarding the sources of funding for the initial Plan payment. The sources of funding are addressed in the Declaration of Michael Tew, Chief Financial Officer of the Debtor and Non-Debtor Affiliates ("Tew Declaration"), which is being filed in conjunction herewith.

13. In the event that the initial funding is not achieved by the Effective Date, the Debtor does not oppose the inclusion of provisions that would address a post-confirmation Plan default. The Debtor respectfully submits that the proposed provisions suggested in ¶ 15 of Global BTG's objection are overly complicated. Nevertheless, the consequences of an uncured Plan default should be known and certain. The procedures and processes for addressing a Plan default should be the subject of a mutually acceptable process among and between the Debtor, Global BTG, the Creditors' Committee and the UST.

14. Global BTG's third object foreshadowed an anticipated objection by the UST (which was thereafter filed) concerning a release in favor of Global BTG from the Debtor, Non-Debtor Affiliates and Mr. and Mrs. Alf. The Plan provides for such a release.

15. The UST in its objection, has raised this very issue in ¶¶ 25-27, inclusive. To be clear, Global BTG possesses a final judgment and the Debtor is unaware and has no knowledge of any claims that it may have as against Global BTG, its principal (Mr. Jacob Hodges) and Global BTG's counsel, Perkins Coie. No such claims were listed in the Debtor's bankruptcy schedules or in the Disclosure Statements.

16. The release required by Global BTG under the Settlement Agreement may be proverbial *belt and suspenders*. Nonetheless, it provides additional comfort and closure to Global

BTG. Further, by virtue of the Plan injunction Global BTG would be precluded from reinstituting or resuming judgment enforcement proceedings as against Non-debtor Affiliates and the Alfs.

### III. Limited Objection of UST.

17. The UST filed its Limited Objections [Doc. #843]. Essentially, the UST objects to the scope and breadth of the releases and exculpations provided for under the consensual Plan. In the Debtor's view, this objection is largely grounded in policy considerations, which the UST has raised in other chapter 11 cases. The specific facts and features of this proposed Plan, however, are distinctive and unique.

18. The Debtor does not dispute the UST's recitation of the controlling case law, particularly within the Second Circuit as set forth in ¶¶ 15-19 of its objection. The Debtor is also cognizant of the cases recited in ¶ 28 of the UST's objection.

19. It is respectfully submitted that in material respects the proposed Plan has unique attributes and provisions that distinguish it from other chapter 11 plans and does not run afoul of the principles articulated in *Deutsch Bank AG v. Metromedia Fiber Network, Inc.* (*In Re Metromedia Fiber Network, Inc.*)., 416 F.3d 136 (2d Cir. 2005) and its progeny.

20. Notably, the proposed Plan provides for a maximum 94% distribution to the general unsecured creditors in Class 3. This factor is compelling and markedly different than most chapter 11 plans.

21. The proposed resolution of the D&O Litigation (as defined below) is also compelling. Specifically, $4,000,000.00 out of the approximate $6,000,000.00 required as the initial Plan payment on the Effective Date is sourced through two insurance carriers that provided policies insuring directors and officers ("D&O Coverages"). The settlement under the D&O

Coverages were triggered by the adversary proceeding commenced by the Creditors' Committee as against current and former directors and officers of the Debtor, together with numerous affiliated and related parties, all of whom are defendants in Adversary Proceeding 16-08081-MJK (the "D&O Litigation").  The proposed settlement and resolution of the D&O Litigation is the result of difficult negotiations over an extended period of time, which included mediation sessions that preceded the actual filing of the D&O Litigation complaint.

22. No doubt if the D&O Litigation were to run its course, it would be a costly affair. The defense costs would diminish and reduced the coverages available under the subject insurance policies.  Moreover, if prosecuted the outcome of the D&O Litigation would be most uncertain and beyond speculation.  This is functionally the same as a Rule 9019 settlement, although contain within the parameters of the Plan.

23. It is further submitted that the D&O Coverages were provided for under policies where the named insured is *National Air Cargo Holdings, Inc*. (the Debtor's parent).   Although the Debtor's directors and officers included with coverage it is not the policyholder.  Arguably the Debtor may not have had a direct interest in the subject D&O policies.

24. Notwithstanding, the D&O carriers negotiated a settlement to fund $4,000,000.00 conditioned and premised upon the discontinuance of the D&O Litigation, *with prejudice*, as against all of the defendants [*see,* the Tew Declaration].

25. The D&O Litigation included numerous causes of action as against some or all of the named defendants.  Several of the causes of action sought to recover transfers of property pursuant to the provisions of §§ 547, 548 and 550 of the Bankruptcy Code.  Other causes of action were predicated upon breach of fiduciary duties.  All such claims and causes of action must be

discontinued *with prejudice*, such that they cannot be reasserted by any other party claiming by or derivatively through the Debtor. This condition of the settlement is understandable and typical.

26. The consideration being provided for the termination of the D&O litigation is material and significant. The consensual Plan could not be achieved without this substantial funding.

27. In further support of the scope of the releases and exculpations, certain of the Non-Debtor Affiliates, along with Mr. Alf, collectively referred to in the Plan as the Securing Parties, will execute and deliver their joint and several guarantees and stipulations of judgment with respect to the future payments due pursuant to the provisions of the Plan. This feature of the Plan is markedly different from the underlying facts and circumstances of *Metromedia* and its progeny.

28. In the event of a default under the Plan, the Securing Parties have direct contractual liability, on a joint and several basis, for the payments due under the Plan. Further, they will have executed and delivered stipulated judgments that will facilitate collection efforts in a more expeditious and prompt manner should a Plan default occur.

29. It is respectfully submitted that releasing the Non-Debtor Affiliates and the Alfs from chapter 5 claims and other causes of action, the liability of which has not been established, is appropriately supplanted by a more linear and direct path of recourse through the guarantees and stipulated judgments.

30. This is a significant distinguishing feature that is a significantly better alternative than preserving and pursuing chapter 5 causes of action or other claims, particularly in light of the fact that the Plan provides for a meaningful recovery of not less than 60% and up to 94% of the allowed general unsecured claims in Class 3.

31. The UST objection at ¶¶ 29-30, inclusive, asserts that the exculpation provisions are overly broad (the reference to Plan section 12.10.3 is incorrect and the UST likely meant section 12.11). Certainly the classes of parties benefitted by the exculpation includes what the UST deems to be permissible parties. The inclusion of prior and subsequent related parties in the nature of insiders (i.e. predecessors, successors, assignees, officers and directors) is a rational and logical extension of the protected class. This is conventional language that is typically included in release agreements. A more restrictive approach is fundamentally not "market".

32. The Debtor does not disagree that exculpations for future post-confirmation conduct, commissions or omissions is not appropriate.

33. Finally, the proposition at ¶¶s 36-37 that specific consents were not obtained through the Plan balloting process is simply impracticable and would create a perplexing conundrum. Would that mean only those creditors who affirmatively approved the releases and exculpations would be so bound? Those that abstained from voting or rejected the proposed releases would not be bound by the Plan provisions? This would be an invitation for great mischief and utter confusion.

### IV. Maersk Objection.

34. In response to concerns initially raised by Maersk's[3] counsel, the Debtor in good faith negotiated the provision cited below for inclusion in a confirmation order that is intended to clarify the scope of the Plan releases. The agreed upon language is as follows:

> Notwithstanding anything to the contrary in the Plan (particularly Plan Section 12 therein), with respect to any party (including any party named as a defendant in an adversary regarding the avoidance of a prepetition transfer

---

[3] The Debtor disputes Maersk's standing to file a Plan objection since it is not a creditor or party-in-interest of the Debtor.

of the Debtor's property) that is neither a creditor( scheduled or that filed a proof of claim), interest holder, a party that filed a notice of appearance or otherwise a party-in-interest of the Debtor, no provision of the Plan shall be construed or deemed to release, bar, compromise, enjoin, restrict or otherwise impair any claim, right or remedy, at law or in equity, that may now or in the future exist only as against any Non-Debtor Affiliate(s), provided however, excluding any Claims (as defined in Plan Section 2.1.17), including without limitation, any derivative or equitable claims or remedies that are predicated upon Claims which are affected by the Plan. Further, nothing contain in this proviso shall impair, hinder, delay, impede, any future legal or equitable proceedings instituted by or on behalf of the GUC Administrator, Global and/or the Professionals who are benefited by the GUC Security Package, the Global Security Package and the professional Security Package.

35. This additional language is acceptable to Maersk, as Debtor's counsel has been so advised. For the avoidance of doubt, nothing in the Plan releases or confirmation injunction impairs or prejudices claims, causes of actions, lawsuits etc. that third-party creditors have or may have against any Non-Debtor Affiliate or other related parties, provided that it is not a Claim in the Debtor's Chapter 11 Proceeding. Nevertheless, Maersk apparently also wants affirmative acknowledgements from National Airlines' counsel and/or Mr. Alf that the Maersk litigation versus National Airlines is unaffected by the Plan releases. This is unnecessary. The language suffices.

V. **Individual Defendants' Objections.**

36. The Debtor does not oppose the proposed clarifying and additional language proffered by the counsel for the Individual Defendants.

WHEREFORE, the Debtor respectfully requests that to the extent applicable, the objections of the UST be overruled and the Court take due consideration of the Debtor's reply and

responses to the objections of Global BTG, Maersk and the Individual Defendants, along with such other and further relief as the Court deems appropriate.

Dated: November 3, 2017
      Buffalo, New York

**LIPPES MATHIAS WEXLER FRIEDMAN LLP**

    */s/ Raymond L. Fink*
Raymond L. Fink, Esq.
John A. Mueller, Esq.
· *Counsel to Debtor, National Air Cargo Inc.*
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202-2216
(716) 853-5100
rfink@lippes.com
jmueller@lippes.com